IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HUGHETTE CRUMPLER, | ) | CASE NO. C-1-02-131 |
| | ) | |
| Plaintiff, | ) | JUDGE SUSAN J. DLOTT |
| | ) | |
| vs. | ) | |
| | ) | |
| TELXON CORPORATION, et al., | ) | |
| | ) | |
| Defendants/Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN W. PAXTON, SR., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## AMENDED DECLARATION OF ROBERT A. GOODMAN

I, ROBERT A. GOODMAN, declare the following is true and correct:

1. I served as the Secretary to Telxon Corporation ("Telxon") from the time the company became a public company in 1983 until the date of its acquisition by Symbol Technologies, Inc. ("Symbol") on or about November 30, 2000.

2. From 1991 through the date of Telxon's acquisition by Symbol, I served on the Board of Directors of Telxon.

3. From 1991 through the date of Telxon's acquisition by Symbol, while serving as Secretary to the company and a member of the company's Board of Directors, I was chiefly

responsible for preparing and submitting to the full Board for its review and approval the minutes of meetings of the Telxon Board of Directors.

4. Attached as Exhibits A through J to my declaration are true and accurate copies of the minutes of meetings of Telxon's Board of Directors held, respectively, on January 23, 1997, January 30, 1998, May 13, 1999, May 25, 1999, August 30, 1999, May 22 and 23, 2000, June 26, 2000, November 2, 2000, November 8, 1999, and June 17, 2000, as approved by the Board of Directors.

5. Attached as Exhibit K to my declaration is a true and accurate copy of an employment agreement between Telxon and Mr. David H. Biggs dated June 15, 2000, attached as Exhibit 10.1.13.a to Telxon's Form 10-K filing with the Securities and Exchange Commission for its fiscal year 2000.

6. Attached as Exhibit L to my declaration is a true and accurate copy of the minutes of the meeting of Telxon's Board of Directors held on March 15, 1998, as approved by the Board of Directors.

I HEREBY DECLARE, under penalty of perjury, that the foregoing is true and correct.

Date: September 19, 2003

ROBERT A. GOODMAN

### MINUTES OF A MEETING
### OF THE BOARD OF DIRECTORS
### OF TELXON CORPORATION
### HELD ON MARCH 15, 1998

Pursuant to notice duly given, a meeting of the Board of Directors of Telxon Corporation (the "Corporation") was held on March 15, 1998, at the Corporation's offices at 3330 West Market Street, commencing at 6:00 p.m. (EST).

The meeting was called to order by Dr. Raj Reddy, Chairman, acting as Chairman of the meeting. Robert A. Goodman, a Director and Secretary of the Corporation, acted as Secretary of the meeting.

In attendance were Frank E. Brick, President and Chief Executive Officer of the Corporation and a Director; and, Norton Rose, Richard Bogomolny and John Cribb, Directors. Also in attendance was Kenneth W. Haver, Senior Vice President and Chief Financial Officer of the Corporation.

Mr. Brick first presented Management's report on the current status of the 4th Quarter, Fiscal Year 1998, concerning which materials had been distributed the previous week. Included in Mr. Brick's report also were twelve major pending projects, product migration, the budgeting process, corporate opportunities, personnel issues and challenges.

Mr. Haver then reported on the Aironet proposed minority private investment placement, at a share value of $3.50 per share, and materials were distributed and overheads reviewed, depicting among other things ongoing access to products and the

EXHIBIT L

CONFIDENTIAL
TEL/SYM 000684

likelihood of unlocking unrecognized value for Telxon shareholders (see Exhibits A and B). The minority investment proposal, as well as the intercompany Supply Agreement would be submitted and discussed in further detail at the continued meeting tomorrow, along with a request for Management to be authorized to negotiate final contracts subject to final, formal Board approval at a phone meeting before the end of the year. In conjunction with this, Mr. Goodman advised, in his capacity as outside general counsel,

Mr. Haver then reported on a proposed sale of the Springside property which had been previously discussed, for $3,000,000 under an option to Developers Diversified.

Mr. Haver next reported on a proposal from Softechniques to buy out their license from the Corporation for approximately $13,000,000, or a $7,000,000 license and a payout of the original purchase contract.

Mr. Haver then reported on the potential sale of Virtual Vision as reported by Rob Eberle (see Exhibit C).

Mr. Haver also reported briefly on a possible repurchase of the Corporation's interest by the majority owners in WaveAccess Ltd. At this point in time, a handout was distributed on a "contingency plan for employee retention" discussed at previous meetings in the 3rd and 4th Quarters of the year. This included employment contracts for members of the PBT team, options

CONFIDENTIAL
TEL/SYM 000685

previously granted to lower level managers, all previously executed. Remaining was the severance plan of six months' guaranteed employment in the event of a change of control, which Management was requesting authority to implement in the event of an unsolicited hostile takeover. As additional severance, there would be a "phantom stock plan," not in the classical sense but in allowing Management to authorize additional compensation based on the price of the stock on the day prior to a hostile takeover commencement. This had all been previously discussed and approved at the Board meeting in December 1997, but upon motion by Mr. Bogomolny and second by Mr. Cribb, it was once again reaffirmed, and Management was authorized to take whatever steps remained, if any, to implement these proposals.

Mr. Brick then discussed the current status of arrangements with Pricer of Sweden, previously distributed, and that Pricer A.B. had inquired as to the Corporation's possible interest in investing additional monies.

Mr. Brick then commented very briefly on Optimal Robotics Corporation, followed by discussion of the Metanetics subsidiary. Here, he mentioned reductions of expense and that he and Mr. Haver would be making a proposal to Mr. Meyerson that Mr. Meyerson acquire additional equity in that subsidiary. Discussed also were issues of licensing and the PSC account receivable, and additional open items that needed further study in light of current thinking of possibly retaining software rights only and not manufacturing rights.

Next, Mr. Brick briefly discussed the potential for acquiring Gap Technologies and then reviewed the current status

CONFIDENTIAL
TEL/SYM 000686

of the Phoenix project and the impact of the latest FASB retroactive expense charges.

Mr. Brick continued with a brief discussion of the termination of the Ernst & Young consulting agreement in reference to Phoenix and the dispute over the remaining account balance.

At this point in the meeting, 9:00 p.m., the meeting adjourned until the following day.

### (CONTINUATION OF MEETING)
### Monday, March 16, 1998, 8:00 a.m.

The meeting was reconvened by Dr. Raj Reddy, Chairman, acting as Chairman of the meeting. Robert A. Goodman, a Director and Secretary of the Corporation, acted as Secretary of the meeting.

In attendance were Frank E. Brick, President and Chief Executive Officer of the Corporation and a Director; and, Norton Rose, Richard Bogomolny and John Cribb, Directors. Also in attendance were Kenneth W. Haver, Senior Vice President and Chief Financial Officer of the Corporation; and, Gerald Gabriel, Vice President of Corporate Development of the Corporation.

Mr. Brick opened with Mr. Gabriel on the budgeting process currently underway. Mr. Brick then reviewed the Fiscal Year 1999 business plan, including the budget for North America and the latest corporate organization chart, all of which were distributed. He reported on the desire to hire Mike Wise as Senior Vice President for Global Services at a salary of $250,000

-4-

CONFIDENTIAL
TEL/SYM 000687

and a $150,000 bonus opportunity, together with an initial grant of 65,000 options under the Employee Stock Option Grant with a vesting over three years and an eight-year term, together with 10,000 restricted shares of stock vesting equally over five years and a one-year severance package. Upon discussion and motion by Mr. Bogomolny and second by Mr. Cribb, the hiring of Mike Wise and the compensation package indicated were unanimously approved.

Mr. Brick then presented a request to hire George Kugler as Vice President of Logistics and Distribution at a salary of $175,000 with a $50,000 bonus opportunity, 10,000 options under the employee stock option plan vesting over three years and an eight-year term. After discussion, upon motion by Mr. Cribb and second by Dr. Reddy, Mr. Kugler's hire and the compensation package indicated were unanimously approved.

Mr. Brick then reviewed the operating goals and operating margins for the forthcoming Fiscal Year 1999, together with a profit and loss comparison estimate for Fiscal Year 1998 and a review by category of the budgeting items on a preliminary basis. Included in Mr. Brick's presentation were a profit and loss projection by Quarter for the coming year; the North America budget; the International budget; the Aironet prospects; the Metanetics prospects; Virtual Vision expenses, and marketing and research, development, engineering and capital budgets.

At this point in the meeting, Mr. Goodman presented a report in his capacity as outside general counsel,

CONFIDENTIAL
TEL/SYM 000688

- 6 -

CONFIDENTIAL
TEL/SYM 000689

The budget for Fiscal Year 1999 earlier presented by Mr. Brick was now moved for approval by Mr. Bogomolny and seconded by Mr. Cribb, and unanimously approved.

At this point, Mr. Haver presented a Goldman Sachs engagement letter for the "Sharpen" project, certain changes of which had been recommended by Mr. Goodman and which were discussed at this time in detail. After discussion, upon motion by Dr. Reddy and second by Mr. Rose, the engagement letter (as modified) with Goldman Sachs was approved, and Management was authorized to execute same.

At this point in the meeting, Mr. Haver reviewed the current status of the proposed acquisition of Sharpen, materials concerning which had previously been distributed and additional ones, as well, were now distributed. The parameters and concepts for such a possible structured transaction were reviewed once again and were to be presented further at an April telephone meeting, if necessary. Discussion followed regarding certain revised ratios and margins and financial assumptions/synergies which were being contemplated as well as current status of litigation and legal issues raised thereby which were discussed by Mr. Goodman.

The final item to come before the meeting was a request with regard to the Metanetics subsidiary to buy back the stock previously owned in that company by, and concomitantly the canceling of loans to, Messrs. Brick, Cleveland, Eberle, Murphy and Meyerson, and that each such loan until these repurchases were accomplished be extended through September 30, 1998. All of which, upon motion by Dr. Reddy and second by Mr. Goodman, were unanimously approved.

CONFIDENTIAL
TEL/SYM 000690

There being no further business to come before the meeting, the same adjourned at approximately 12:30 p.m.

_____
Robert A. Goodman, Secretary

G:\RAG\TELXON\BOARD\Minutes\1998\98-03-15 (In Person)

CONFIDENTIAL
TEL/SYM 000691