LEXSEE 1996 US APP LEXIS 6108

**JEROME Z. GINSBURG, Plaintiff-Appellee/Cross-Appellant, v. EDWIN A. HADDAD and ED HADDAD ENTERPRISES, INC., Defendants-Appellants/Cross-Appellees, MARCIA, HADDAD, Appellant. MARCIA HADDAD and EDWIN A. HADDAD, Plaintiffs-Appellants, v. JEROME Z. GINSBURG, Defendant-Appellee.**

Nos. 93-3506/93-3548/93-3724

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1996 U.S. App. LEXIS 6108*

**March 6, 1996, Filed**

**NOTICE: [*1]** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *78 F.3d 584, 1996 U.S. App. LEXIS 10269*.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For JEROME Z. GINSBURG, Plaintiff - Appellee Cross-Appellant: Marvin L. Karp, Ulmer & Berne, Cleveland, OH.

For ED HADDAD ENTERPRISES, INC., EDWIN A. HADDAD, Defendants - Appellants Cross-Appellees: Brent L. English, Cleveland, OH.

For MARCIA HADDAD, Appellant Cross-Appellee: Brent L. English, (See above).

For MARCIA HADDAD, EDWIN A. HADDAD, Plaintiffs - Appellants: Brent L. English, Cleveland, OH.

For JEROME Z. GINSBURG, PLAZA 71 ASSOCIATES, INC., Defendants - Appellees: Marvin L. Karp, Ulmer & Berne, Cleveland, OH.

**JUDGES:** Before: LIVELY, NELSON and SILER, Circuit Judges.

**OPINIONBY:** DAVID A. NELSON

**OPINION:**

DAVID A. NELSON, Circuit Judge. These are appeals and a cross-appeal in two lawsuits stemming from disputes that arose in the course of **[*2]** extensive business dealings between Jerome Z. Ginsburg, a resident of Florida, and Edwin A. Haddad, a resident of Ohio. Mr. Haddad and his wife sued Mr. Ginsburg in the Court of Common Pleas of Medina County, Ohio, and the case was removed to federal court on diversity grounds. District Judge George White ultimately entered summary judgment for Mr. Ginsburg in the removed action. Mr. Ginsburg, meanwhile, sued Mr. Haddad and Ed Haddad Enterprises, Inc., in federal court. That case was tried before District Judge David Dowd, sitting without a jury. Judge Dowd entered judgment for Mr. Ginsburg on certain of the latter's claims and entered judgment against both Edwin and Marcia Haddad on certain counterclaims.

The summary judgment in favor of Mr. Ginsburg will be affirmed. The case in which Mr. Ginsburg was the plaintiff will be remanded for correction of a typographical error in the date from which post-judgment interest runs and for deletion of Marcia Haddad's name from the ruling on the counterclaim. In all other respects

the judgment in Mr. Ginsburg's case will be affirmed as well.

I

In 1983 Jerome Ginsburg became interested in developing a shopping center in Medina County, Ohio, [*3] with Edwin and Marcia Haddad. Mr. Haddad held an option to purchase the proposed site.

In March of 1983 Mr. Ginsburg sent the Haddads an unsigned joint venture agreement relating to the project. The agreement was predicated upon the truth of various representations of Marcia Haddad that were enumerated in the agreement. Ownership was to be split 50-50 if the parties entered into certain other ventures they had been discussing; otherwise the split was to be two-thirds in favor of Mr. Ginsburg. The agreement was never signed, according to Mr. Ginsburg.

A company called Plaza 71 Associates eventually purchased the shopping center site, using funds supplied by Mr. Ginsburg. Plaza 71 Associates was later dissolved, and all of its assets were transferred to Mr. Ginsburg.

Edwin Haddad, who received $ 150,000 for his option, acted as on-site construction coordinator and leasing agent during the construction of the shopping center. Mr. Ginsburg paid Mr. Haddad $ 3,000 per month as compensation. From time to time Mr. Ginsburg also sent Mr. Haddad funds to cover various expenses relating to the shopping center. These funds were deposited in a bank account opened under the name "Ed Haddad [*4] Special Account." A July 1986 audit revealed a number of unauthorized withdrawals from the special account.

In August of 1984 Mr. Ginsburg agreed to the formation of Golden Petroleum, Inc., a company in which Mr. Ginsburg and Marcia Haddad each held a 50 percent interest. Golden Petroleum acquired a 65-acre oil and gas prospect near the shopping center, and the company was also supposed to obtain oil and gas leases elsewhere, syndicate them, and drill and operate the wells. Mr. Ginsburg funded Golden Petroleum, initially, on condition that he be named president. Instead the Haddads made Edwin Haddad president without telling Mr. Ginsburg. The oil and gas wells that were to have been drilled and operated by Golden Petroleum were drilled and operated by Mr. Haddad and his lawyer, with none of the revenues going to Golden Petroleum. Mr. Haddad attempted to use the 65-acre tract as collateral for a personal loan, attempted to sell part of it, and sold timber from the land, keeping the proceeds for himself.

Mr. Haddad owned a 7-1/2 acre tract adjacent to the 65 acres titled to Golden Petroleum. On April 23, 1984, Mr. Ginsburg sent Mr. Haddad $ 6,000 for a half interest in the tract. [*5] Mr. Haddad, however, retained full ownership.

On November 23, 1990, the Haddads filed their state court action against Mr. Ginsburg to enforce the agreement allegedly made in 1983. They claimed that Mr. Ginsburg should have given Marcia Haddad either one-half or one-third of the shopping center and that Mr. Ginsburg had failed to compensate Mr. Haddad for his services. Mr. Ginsburg moved for summary judgment following the removal of the case to federal court. Judge White granted the motion, holding that the Haddads' suit was barred by Ohio's statute of frauds. He further held that Marcia Haddad had never met the terms of the draft agreement and thus could not enforce it in any event. A motion for reconsideration was denied on grounds to which we shall allude presently.

Mr. Ginsburg filed his federal court case against Mr. Haddad and Ed Haddad Enterprises four days after the filing of the Haddads' case in the state court. Mr. Ginsburg alleged misappropriation of funds for the shopping center; failure to convey a half interest in the 7-1/2 acre tract; failure to pay a $ 15,000 balance that remained outstanding on a personal loan used by Mr. Haddad for the purchase of a condominium [*6] in the name of Ed Haddad Enterprises; failure to repay $ 7,500 that had been lent Mr. Haddad for the purpose of paying a petroleum geologist; and fraud regarding drainage problems on the 7-1/2 acre tract. Edwin Haddad filed counterclaims incorporating by reference the claims made in the removed action "to the extent that [they] are compulsory counterclaims and must be asserted herein . . . ." Mr. Haddad's pleading concluded with a prayer for judgment on "his" counterclaims.

On January 8, 1993, after a trial of the federal case to the court, Judge Dowd found that Edwin Haddad had converted funds from Mr. Ginsburg; that although conversion claims arising before 1986 were time-barred, a subsequent conversion claim was not; that Mr. Haddad was liable to Mr. Ginsburg in the amount of $ 6,000 for the 7-1/2 acre tract; that Mr. Haddad and Ed Haddad Enterprises were liable to Mr. Ginsburg for the outstanding balance on the personal loan; and that Mr. Haddad was liable for $ 7,500 on the geologist loan. The court found for Mr. Haddad on the fraud charges. The counterclaims were decided in favor of Mr. Ginsburg and against Mr. and Mrs. Haddad.

II

We first address the Haddads' claim that [*7] Judge White wrongfully relied on the doctrines of *res judicata* and collateral estoppel in refusing to reconsider his grant of summary judgment to Mr. Ginsburg. We need not reach this issue, because Judge White also made clear that Judge Dowd's opinion "was consistent with" his

own. There are no material issues of disputed fact with respect to the claims decided by Judge White. The Haddads' conclusory allegation that Mrs. Haddad met the conditions of the 1983 "agreement" is insufficient, and there was clear evidence that Mr. Ginsburg had in fact paid Mr. Haddad for his services in connection with the shopping center.

### III

Judge Dowd granted Mr. Ginsburg a money judgment for some of the funds misappropriated by Mr. Haddad. The Haddads contend that the evidence was insufficient to support this judgment. We disagree.

The trial court analyzed considerable evidence showing that Mr. Haddad used shopping center monies to make mortgage payments on the 7-1/2 acre tract and for other unauthorized purposes. Judge Dowd specifically found the Haddads' testimony to be less credible than Mr. Ginsburg's. The trial court's assessment of the evidence presented was logical, and given the great [*8] deference due to its findings on credibility, see *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 616 (6th Cir. 1986), cert. denied, 481 U.S. 1041, 95 L. Ed. 2d 823, 107 S. Ct. 1983 (1987), we cannot say that the trial court erred in finding that funds furnished by Mr. Ginsburg were misappropriated.

Judge Dowd also concluded that Mr. Haddad's misappropriation constituted conversion, a tort that is subject to a four-year statute of limitations. Ohio Rev. Code § 2305.09. The limitations period began to run only when Mr. Ginsburg discovered, or should have discovered, the conversion. *Investors REIT One v. Jacobs,* 46 Ohio St. 3d 176, 546 N.E.2d 206, 210 (Ohio 1989). Because Mr. Ginsburg discovered the 1984 and 1985 withdrawals in 1986, when his staff audited Marcia Haddad's records, the court held that claims for those years were time-barred. Misexpenditures that occurred in 1986 were not reasonably discovered until March of 1987, the court held, when Marcia Haddad sent Mr. Ginsburg the relevant documents for the special account. Because that was less than four years before the filing of suit, the 1986 claims were held to be timely.

Again, we cannot say that the court erred. [*9] Notice is a question of fact, findings on which are subject to review under a "clearly erroneous" standard. *Charash v. Oberlin College,* 14 F.3d 291, 300 (6th Cir. 1994). Although there is some logic to the Haddads' claims that Mr. Ginsburg failed to exercise due diligence after the 1986 audit revealed the initial misappropriations, the evidence presented does not convince us that Judge Dowd's finding was clearly erroneous. See *Aircraft Braking Sys. Corp. v. Local 856, United Auto, Aerospace, and Agricultural Implement Workers,* 1995 U.S. App. LEXIS 9517, 1995 WL 236678, at *5 (6th Cir. April 21) (unpublished opinion), *cert. denied,* 133 L. Ed. 2d 121, 116 S. Ct. 182 (1995).

We also reject Mr. Ginsburg's contention that all of the claims in question were subject to the six-year statute of limitations for quasi-contractual and unjust enrichment claims. Ohio Rev. Code § 2305.07. Although quasi-contractual liability arises when "a person [is] in receipt of benefits which he is not justly entitled to retain," *Legros v. Tarr,* 44 Ohio St. 3d 1, 540 N.E.2d 257, 263 (Ohio 1989), a person who wrongfully takes and exercises dominion over another's personal property -- including [*10] money -- commits conversion. *Charash,* 14 F.3d at 297. An action lies in conversion where misappropriated funds are identifiable and there is an obligation to deliver the specific funds in question. *Hinkle v. Cornwell Quality Tool Co.,* 40 Ohio App. 3d 162, 532 N.E.2d 772, 776 (Ohio Ct. App. 1987). In the case at bar, as in *Hinkle,* the funds at issue were identifiable, having been placed in the special account for use solely in a specified business venture. The gravamen of Mr. Ginsburg's complaint is that Mr. Haddad took the funds wrongfully -- and such a claim sounds in tort. The court did not err in applying the four-year statute.

The Haddads contend that there was insufficient evidence to support Judge Dowd's findings with respect to the balance of the personal loan and the loan to pay the petroleum geologist. These contentions are without merit. Judge Dowd found Mr. Haddad's version of events -- that in 1986 Mr. Ginsburg waived the final $ 15,000 of the personal loan in exchange for being bought out of his interest in an oil well, and that Golden Petroleum actually hired the geologist -- unworthy of belief. Mr. Haddad's financial statements for 1987 indicated that the [*11] balance of the personal loan was still due, the condominium was in fact titled to Ed Haddad Enterprises, and Mr. Ginsburg produced letters indicating that it was Mr. Haddad's responsibility to pay the geologist. The evidence is clearly sufficient to support the judgment on these claims.

Mr. Haddad also argues that he was not unjustly enriched by keeping $ 6,000 that Mr. Ginsburg sent him for a half interest in the 7-1/2 acre tract, there having been an agreement to transfer the tract to the corporation in which Mr. Ginsburg already had a half interest. On the facts as found by the court, however -- facts that we are bound to accept -- Mr. Haddad was unjustly enriched by the retention of the $ 6,000. And Mr. Ginsburg was entitled to money damages even though he requested relief under the doctrine of specific performance: a court may grant relief to which a party is entitled notwithstanding the party's failure to request it in his pleadings. *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists and Aerospace Workers,* 376 F.2d

*337, 342 (6th Cir. 1967), aff'd, 390 U.S. 557, 20 L. Ed. 2d 126, 88 S. Ct. 1235 (1968).*

The Haddads insist this claim is time-barred under Ohio **[*12]** Rev. Code § 2305.07, Mr. Ginsburg having advanced the money more than six years before he filed suit. We disagree. The discovery rule applies to unjust enrichment claims, *Investors REIT One v. Jacobs, 546 N.E.2d at 210,* and Mr. Ginsburg first discovered that the money had not been used to buy the 7-1/2 acre tract in 1986. Accordingly, the claim is not time-barred.

IV

The Haddads argue that it was error to treat Marcia Haddad as party to the counterclaims. We agree. If Edwin Haddad incorporated the claims before Judge White as counterclaims in the action before Judge Dowd, that did not make Marcia Haddad a party to an action in which she had never been sued and in which she did not appear until after the entry of judgment. Whatever the status of Edwin Haddad's claims may have been, Martha Haddad's claims did not have to be asserted in the action filed by Mr. Ginsburg because she was not a defendant in that action.

We note that Judge Dowd entered judgment on January 9, 1993; an amended judgment imposed post-judgment interest from January 9, 1992. This was clearly a typographical error, and it should be corrected on remand.

We **AFFIRM** the summary judgment and the denial **[*13]** of the motion to reconsider in the case removed from state court. We **REMAND** the federal court case for correction of the judgment in the two respects noted, but otherwise **AFFIRM** the judgment in that case in its entirety.