UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FILED**

| | |
|---|---|
| HUGHETTE CRUMPLER, | Case No. C1-02-131 |
| Plaintiff, | (Judge Susan J. Dlott) |
| v. | |
| TELXON CORPORATION, *et al.*, | |
| Defendants/ Third-Party Plaintiffs, | **THIRD-PARTY DEFENDANT JOHN W. PAXTON, SR.'S MEMORANDUM IN OPPOSITION TO SYMBOL TECHNOLOGIES, INC.'S MOTION TO DISMISS COUNTERCLAIM** |
| v. | |
| JOHN W. PAXTON, SR., | |
| Third-Party Defendant. | |

SEP 3 0 2002

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

I.    **BACKGROUND**

A.    **Prior Proceedings.**

Plaintiff Hughette Crumpler initiated the instant litigation by filing a complaint against Defendants Telxon Corporation ("Telxon") and Symbol Technologies, Inc. ("Symbol") in the Hamilton County Court of Common Pleas on January 18, 2002.  Crumpler alleged two counts, breach of contract (against Telxon, her former employer) and intentional interference with contract (against Symbol, which wholly acquired Telxon in a merger on or about December 1, 2000) arising from the termination of her employment as a result of the merger and the non-payment of certain amounts due to her under contracts she had with Telxon.  Telxon and Symbol, both Delaware corporations, removed the matter to this Court on February 25, 2002, and filed an Answer and Counterclaim against Crumpler on March 25, 2002.

Telxon and Symbol filed a Third-Party Complaint against Third-Party Defendant John W. Paxton, Sr. (hereinafter, "Paxton") on April 3, 2002, which was not successfully served upon

Paxton until July 26, 200   In the Third-Party Complaint, Telxon and Symbol alleged four counts against Paxton including "Fraud," "Breach of Fiduciary Duty," "Indemnity" and "Contribution." Reduced to its essence, the Third-Party Complaint asserts that as Telxon's Chief Executive Officer and Chairman of the Board of Directors, Paxton acted beyond the scope of his authority in first retaining Crumpler as a consultant and later hiring her as an employee and providing her with certain contractual benefits including a "Change in Control Agreement" and a "Relocation Agreement," all supposedly without the knowledge of the Board of Directors and to the alleged detriment of Telxon (and, due to the subsequent merger in which Symbol acquired Telxon, to Symbol's alleged detriment as well). Telxon and Symbol further asserted that, to the extent Telxon and/or Symbol should be found liable to Crumpler, Paxton should be held responsible for any damages awarded.

**B.**    **Paxton's Counterclaim.**

Paxton filed an Answer and Counterclaim to the Third-Party Complaint on August 14, 2002, denying all wrongdoing and asserting a right to Indemnification from Symbol for any and all "losses, claims, damages, liabilities, costs and expenses (including attorneys' fees and expenses), judgments, fines, losses and amounts paid in settlement in connection with the Third-Party Complaint." Paxton bases his Indemnification Counterclaim upon the explicit terms of the July 25, 2000 Agreement and Plan of Merger (hereinafter, the "Merger Agreement") between Telxon and Symbol, a public document filed with the Securities Exchange Commission on or about August 14, 2000, which by its terms is governed by Delaware law. (Counterclaim, ¶¶ 1-5)

Specifically, Section V.6(a) of the Merger Agreement, entitled "Directors' and Officers' Indemnification; Insurance," states that:

> For six years from the Effective Time [of the merger, *i.e.*, December 1, 2000], **to the full extent permitted under the**

DGCL [Delaware General Corporation Law], Parent [Symbol] shall cause the Surviving Corporation [Telxon] to indemnify, defend and hold harmless any person who is now, or has been at any time prior to the date hereof, or who becomes prior to the Effective Time, a director, officer, employee or agent (an "Indemnified Person") of Telxon] or any of its subsidiaries against all losses, claims, damages, liabilities, costs and expenses (including attorneys' fees and expenses), judgments, fines, losses and amounts paid in settlement in connection with any actual or threatened action, suit, claim, proceeding or investigation (each a "Claim") to the extent that any such Claim is based on, or arises out of: (1) the fact that such Indemnified Person is or was a director, officer, employee or agent of the Company or any of its subsidiaries or is or was serving at the request of the Company or any of its subsidiaries as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise; or (ii) this Agreement or any of the transactions contemplated hereby, in each case to the extent that any such Claim pertains to any matter or fact, arising, existing or occurring prior to or at the Effective Time, regardless of whether such Claim is asserted or claimed prior to, or at or after the Effective Time. Without limiting the generality of the preceding sentence, in the event any Indemnified Person becomes involved in any Claim, after the Effective Time, [Symbol] shall cause [Telxon] to periodically advance to such indemnified person its legal and other expenses (including the cost of any investigation and preparation incurred in connection therewith), subject to the providing by such Indemnified Person of an undertaking to reimburse all amounts so advanced in the case of a final nonappealable determination by a court of competent jurisdiction that such Indemnified Person is not entitled to be indemnified therefor.

(Counterclaim, ¶ 5) (emphasis added).

On September 4, 2002, Symbol filed a Motion to Dismiss Paxton's Counterclaim for failure to state a claim upon which relief can be granted, admitting, as it must for purposes of such a motion, all of the facts set forth in Paxton's Counterclaim but misleadingly arguing that under applicable Delaware law "Symbol not only has no obligation to indemnify Paxton on the claims for which he seeks it [but] is actually prohibited from providing such indemnification."

(Symbol's Motion to Dismiss at 1) As demonstrated below, Symbol's conclusion is wrong as a matter of law and should be rejected.

## II.    ARGUMENT

Symbol's contention that it cannot as a matter of law be liable to indemnify Paxton for the claims being advanced in this action is transparently incorrect under well-established Delaware law. While it is *possible*, as Symbol has pointed out, that the result of this litigation may leave Symbol with no obligation to indemnify Paxton for any liability and/or attorneys' fees incurred in Paxton's defense, there are any number of potential outcomes that would result in Symbol (through its wholly-owned subsidiary Telxon)[1] being liable to indemnify Paxton for certain liabilities, judgments and/or expenses, including attorneys' fees. Under the well-established Rule 12(b)(6) standard, Third-Party Defendant Paxton therefore respectfully submits that Symbol's Motion to Dismiss must be denied.

### A.    Symbol's Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim Cannot Be Granted Unless There Is No Set Of Facts Upon Which Paxton Could Recover, Which Plainly Is Not The Case Here.

Symbol has moved to dismiss Paxton's Counterclaim for Indemnification pursuant to Rule 12(b)(6). It is black-letter law that such a motion cannot be granted unless the movant, who has the burden of proof, can show beyond doubt that there is no set of facts consistent with the

---

[1] Symbol has challenged the propriety of it being named as the entity liable to indemnify Paxton on the basis that it never directly employed Paxton and Delaware law provides for indemnification only of individuals who were directors or officers of the corporation. (Symbol's Memo. in Support at 6) In naming only Symbol as a defendant in the Counterclaim, Paxton alleged that (1) Telxon (Paxton's former employer) is now a wholly-owned subsidiary of Symbol and (2) more importantly, the language in the Merger Agreement between the two corporations, quoted above, plainly requires that Symbol "shall cause" Telxon to "indemnify, defend and hold harmless" any then-current or former director or officer. (*See* Counterclaim, ¶¶ 4-6, 11) Thus, Symbol's indemnification obligation arises from the Merger Agreement itself, not Delaware law alone. In any event, because Symbol has raised this issue, Paxton will be filing tomorrow an Amended Counterclaim to, *inter alia*, add Telxon as a defendant. (Under F.R.Civ.P. 15(a). Paxton may file the Amended Complaint as a matter of course because Symbol has not yet filed a responsive pleading; it is well established that a motion to dismiss does not qualify as a "responsive pleading" for purposes of Rule 15(a). *See, e.g.,* Lewis v. Fresne, 252 F.3d 352, 360 (5th Cir. 2001); Shane v. Fauver, 213 F.3d 113, 115 (3rd Cir. 2001); Braxton v. Scott, 905 F.Supp. 455, 459 (N.D. Ohio 1995)).

allegations set forth in the counterclaim which would entitle the party asserting the counterclaim to judgment. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957) (movant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief"); Hishon v. King & Spaulding, 4  7 U.S  69, 73, 104 S.Ct. 2229 (1984) (same); In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993) (court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.").

Thus, Paxton need not *prove* at this early stage that he is absolutely entitled to indemnification against Symbol, but merely must show that, given the applicable law, a set of facts could exist, consistent with the allegations of the Counterclaim, which would entitle him to indemnification. For all the reasons set forth below, it is plain that Paxton can make such a showing here; the Court therefore should deny Symbol's motion.

**B.    Delaware Law Recognizes A Strong Public Policy Of Broad Indemnification Of Corporate Officers And Directors And Expansive Interpretation Of Delaware's Indemnification Statute.**

Delaware courts have repeatedly emphasized that Delaware's indemnification statute, set forth at Title 8 of the Delaware Code, § 145, is to be broadly interpreted to further the goals it was enacted to achieve. In Stifel Financial Corp. v. Cochran, 2002 Del. LEXIS 393 (Del. June 13, 2002) (Attachment A), for example, the Delaware Supreme Court recently reiterated that:

> This Court has emphasized that the indemnification statute should be **broadly interpreted** to further the goals it was enacted to achieve. *See generally*, Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 344 (Del. 1983); VonFeldt v. Stifel Financial Corp., 714 A.2d 79, 84 (Del. 1998). **The invariant policy of Delaware legislation on indemnification is to "promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable**

**expenses will be borne by the corporation they have served if
they are vindicated."** Folk, on Delaware General Corporation
Law sec. 145 (2001). Beyond that, its larger purpose is "to
encourage capable [individuals] to serve as corporate directors,
secure in the knowledge that expenses incurred by them in
upholding their honesty and integrity as directors will be borne by
the corporation they serve." Id.

As we stated in VonFeldt, we will "eschew narrow construction of
the statute (section 145) where an over literal reading would
disserve" these policies.

Id., 2002 Del. LEXIS 393 at *17-*18 (emphasis added).

Likewise, in Perconti v. Thornton Oil Corp., 2002 Del. Ch. LEXIS 51 (Del. Ch. May 3,

2002) (Attachment B), the court explained at length, citing ample case law, that:

Indemnification assists corporate officers and directors in resisting
unjustified lawsuits and encourages corporate service by assuring
individuals that the risks incurred by them as a result of their
efforts on behalf of the corporation will be met, not through their
personal financial resources, but by the corporation.

**Indemnification for officers and directors should be seen as
less an individual benefit arising from personal employment
than as a desirable underwriting of risk by the corporation in
anticipation of greater corporate-wide rewards . . . .** Director
and officer indemnification benefits the corporation more than the
director or officer covered.

**Thus, Section 145 must be applied in light of the broad,
salutary policy goal of assuring corporate officers and
directors that their corporation will absorb the risks** that may
result from performance of their duties and, accordingly,
**Delaware's indemnification statute has been interpreted
expansively.**

Id., 2002 Del. Ch. LEXIS 51 at *9 (emphasis added) (footnotes omitted). *See also*, Witco Corp.

v. Beekhuis, 38 F.3d 682, 691-92 (3rd Cir. 1994) (observing that "Courts have interpreted

[Section 145's] indemnification rights very broadly."). Therefore, in assessing Symbol's

argument against the possibility of indemnification coverage for Paxton, any doubts about the scope or availability of such coverage should be resolved against Symbol.

**C.**     **Pursuant To Delaware Code Title 8, Section 145(c) And The Explicit Language Of The Merger Agreement, Which Mandates Indemnification "To The Full Extent Permitted" Under Delaware Law, Symbol Must Require Telxon To Indemnify Paxton For Litigation Expenses, Including Attorneys' Fees, If Paxton Is "Successful On The Merits Or Otherwise In Defense Of [This] Action . . . Or In Defense Of Any Claim, Issue Or Matter" Herein.**

As set forth in paragraph 5 of Paxton's Counterclaim, the Merger Agreement between Symbol and Telxon requires indemnification "to the full extent permitted" under the Delaware General Corporation Law of any person who, like Paxton, was a director, officer, employee or agent of Telxon, against any claim, liability or expense, including attorneys' fees, to the extent that any such claim is based on or arises out of the fact that the indemnified person was a director, officer, employee or agent of Telxon.

Paxton has alleged -- and Symbol must accept as true for purposes of its motion -- that he was an officer and director of Telxon prior to the execution of the Merger Agreement. (Counterclaim, ¶ 6)  It is also clear that the claims Symbol and Telxon have asserted against Paxton in their Third-Party Complaint arise from his status as an officer and director. *See* Third-Party Complaint, ¶¶ 7, 13-14; Counterclaim, ¶¶ 7-8; *see also*, ADM Corp. v. Thomson, 707 F.2d 25, 28 (1st Cir. 1983) (defendant "was sued for a breach of a fiduciary duty; thus his legal expenses arise 'by reason of his being' an officer."); MCI Telecom. Corp. v. Wanzer, 1990 Del. Super. LEXIS 222 at *23-*25 (Del. Super. June 19, 1990) (Attachment C) (former employee sued by corporation for, *inter alia*, fraud and breach of fiduciary duty was sued "by reason of the fact that he is or was a director of the corporation" and thus was entitled to indemnification after successfully defending against same).  Paxton has also alleged that the broad indemnification

provision of the Merger Agreement is mandatory, as it states that Symbol "shall cause [Telxon] to indemnify, defend and hold harmless any person who [was] a director [or] officer . . . ." (Counterclaim, ¶ 5) (emphasis added).

The only issue remaining for the Court to ascertain at this stage, therefore, is whether Paxton has alleged facts which, depending on the outcome of this litigation, could bring him within "the full extent" -- *i.e.*, the broadest possible parameters -- of indemnification that a corporation is permitted to extend to an officer or director under the controlling Delaware statute. The answer clearly is yes.

First, Paxton will be entitled to indemnification for litigation expenses, including attorneys' fees, under Section 145(c) of Title 8 of the Delaware Code if Symbol or Telxon fail to prove some or all of their claims against him. While Symbol's Motion to Dismiss correctly identifies Title 8, Section 145 as the governing Delaware provision regarding indemnification, Symbol has selectively cited only particular excerpts of Section 145(b) and (d), ignoring Section 145(c) apparently in order to make it appear that Paxton cannot fall within the scope of the indemnification coverage provided by Section 145.

Section 145(b) of Title 8 states that:

> **A corporation shall have power to indemnify any person who was or is a party** or is threatened to be made a party **to any** threatened, **pending** or completed **action or suit by** or in the right of **the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer,** employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise **against expenses (including attorneys' fees) actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of**

> any claim, issue or matter **as to which such person shall have been adjudged to be liable to the corporation unless and only to the extent that the** Court of Chancery or the **court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which** the Court of Chancery or such other **court shall deem proper.**

(emphasis added).  Thus, when a corporation is suing an officer, "good faith" on the part of the officer seeking indemnification under Section 145(b) is generally a necessary prerequisite to such indemnification *when the officer is found to be liable* to the corporation.[2]

Section 145(c) of Title 8, however, further provides that:

> To the extent that a present or former director or officer of a corporation has been **successful on the merits or otherwise in defense of any action**, suit or proceeding referred to in subsections (a) and (b) of this section, **or in defense of any claim, issue or matter therein**, such person **shall be indemnified against expenses (including attorneys' fees)** actually and reasonably incurred by such person in connection therewith.

(emphasis added).  The plain language of the statute thus reveals that there is no "good faith" component of Section 145(c), and numerous courts have so recognized.

In its Motion to Dismiss, Symbol emphasizes the "good faith" requirement for indemnification contained *in Section 145(b)*.  Symbol then urges the Court to dismiss Paxton's Indemnification Counterclaim because the claims Symbol and Telxon have asserted against Paxton allegedly necessarily rest upon a finding of bad faith.  (Symbol's Memo. in Support at 6-9)  In short, Symbol argues that "if Paxton committed the alleged acts, he is not entitled to indemnification [and] if Paxton did not commit the alleged acts, there is nothing to indemnify." (Symbol's Memo. in Support at 2)  This is where Symbol's disregard of Section 145(c) comes

---

[2]  As discussed in Section E below, however, even when an officer is found liable to a corporation, the officer still may qualify for indemnification under Section 145(b) when, in the court's discretion, indemnification is appropriate "in view of all the circumstances of the case."

into play.  While Symbol may be correct that if Paxton prevails fully and on all claims and issues asserted against him in the Counterclaim there would be no ensuing *liability* against which to be indemnified *under Section 145(b)*, Paxton still would have incurred substantial attorneys' fees and other expenses in defending himself, for which he would be entitled, as a "successful" former officer, to indemnification *under Section 145(c)*.

Delaware case law reinforces the plain language of Section 145(c) and affirms Paxton's potential right to indemnification for attorneys' fees and other expenses regardless of "good faith."  In <u>Perconti v. Thornton Oil</u>, *supra*, 2002 Del. Ch. LEXIS 51, for example, a former chief executive officer sued the defendant corporation for indemnification under Section 145(c) and the corporation's bylaws[3] to recover costs incurred to defend himself in an action that had been brought against him in connection with his status as an officer of the corporation.  Addressing the scope of Section 145(c)'s coverage, the court concluded that because the officer had been "successful on the merits or otherwise" in his defense of that action, as required by Section 145(c), he was entitled to indemnification whether or not he had acted in good faith or the best interests of the corporation.  "If the former officer is 'successful on the merits or otherwise' . . . then he is entitled to indemnification **regardless of whether or not he acted in good faith or in what he perceived to be the best interests of the corporation.**"  <u>Id.</u>, 2002 Del. Ch. LEXIS 51 at *11 (emphasis added).[4]

---

[3] In language virtually identical to that of the Merger Agreement here, the defendant corporation's bylaws in <u>Perconti</u> stated that directors and officers "shall be indemnified to the fullest extent authorized by Delaware General Corporation Law . . . ." <u>Id.</u>, 2002 Del. Ch. LEXIS 51 at *6.

[4] While <u>Perconti</u> involved a former corporate officer seeking indemnification for expenses incurred in defense of a criminal action, which falls under Section 145(a) (addressing actions against an officer of a corporation by anyone other than the corporation itself) rather than Section 145(b) (which addresses actions against an officer by or in the right of the corporation), this distinction is of no significance here because both sections impose an identical "good faith" requirement on the officer to be entitled to indemnification for a judgment against him, a requirement that the court makes clear is not present in Section 145(c) (which pertains to expenses incurred in defense of "any action, suit or proceeding referred to in subsections (a) and (b) of this section . . . .").

Rejecting an argument virtually identical to Symbol's here, that the motive of the officer

should be assessed in determining whether indemnification rights exist under Section 145(c), the

Perconti court explicitly noted that:

> Under Section 145(a), an "unsuccessful" corporate officer may be indemnified if "the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." **This good faith inquiry has not been mandated under Section 145(c) for the "successful" corporate officer.**

Id., 2002 Del. Ch. LEXIS 51 at fn. 22 (emphasis added). The Perconti court went on to hold that

"to require the corporate officer seeking indemnification under Section 145(c) to demonstrate

that he pursued his course of conduct for the benefit of the corporation or for purposes other than

self-interest would limit the rights clearly conferred by Section 145(c) in a manner that was not

(but could have been) included in the legislative standard." Id. at *15.

Other cases applying Delaware law on the same issue and reaching the same conclusion

are numerous, including Green v. The Westcap Corp. of Delaware, 492 A.2d 260, 264-65 (Del.

Super. 1985), aff'd, 1986 Del. LEXIS 1135 at *5 (Del. 1986) (Attachment D) (providing

extensive analysis of why "good faith" requirement for indemnification under §§ 145(a) and (b)

is not required for recovery of attorneys' fees and expenses under § 145(c)); MCI Telecom. v.

Wanzer, supra, 1990 Del. Super. LEXIS 222 at *28-*30 (explicitly rejecting corporation's

argument that "where there is a breach of fiduciary duty, an intentional wrongdoing, the purpose

and intent of the statute would not be served if indemnification was permitted" and holding that

"there is nothing in the statute that suggests I should read into Section 145(c) an exception to

indemnification where the director has intentionally breached his fiduciary duty."); Waltuch v.

Conticommodity Services, Inc., 88 F.3d 87, 95 (2nd Cir. 1996) ("Unlike § 145(a), which grants a

discretionary indemnification power, § 145(c) affirmatively requires corporations to indemnify

its officers and directors for the 'successful' defense of certain claims"); Witco Corp. v. Beekhuis, *supra*, 38 F.3d at 691 (3rd Cir. 1994) (affirming summary judgment in favor of estate of former officer on claim for indemnification of defense costs under § 145(c) because "Section 145(c) is a mandatory provision that applies to all Delaware corporations and grants an absolute right of indemnification" when former officer was successful "on the merits or otherwise").

In fact, not only would Paxton be entitled to recover his attorneys' fees and other expenses incurred in defending himself in this action should he ultimately prevail on Symbol's and/or Telxon's claims against him, but he would also be entitled to recover for costs and fees incurred in pursuing his Indemnification Counterclaim itself, including, for example, the expenses associated with preparation of this Memorandum in Opposition to Symbol's baseless Motion to Dismiss. Stifel Financial Corp. v. Cochran, *supra*, 2002 Del. LEXIS 393. In language particularly *appropos* to the case at bar, the Delaware Supreme Court in Stifel stated:

> We hold that **indemnification for expenses incurred in successfully prosecuting an indemnification suit are permissible** under § 145(a), and therefore "authorized by law" [as referenced by the defendant corporation's bylaws which, like the Merger Agreement here, required indemnification "to the full extent authorized by law"]. **Allowing indemnification for the expenses incurred by a director in pursuing his indemnification rights gives recognition to the reality that the corporation itself is responsible for putting the director through the process of litigation. Further, giving full effect to § 145 prevents a corporation from using its "deep pockets" to wear down a former director, with a valid claim to indemnification, through expensive litigation.**

Id., 2002 Del. LEXIS 393 at *18-*19 (emphasis added).

Furthermore, indemnification under Section 145(c) is not an all-or-nothing proposition in two important regards. First, the statute provides for indemnification if the defendant former officer has been "successful on the merits **or otherwise**" (emphasis added). Numerous courts

construing Delaware law have recognized that this is a "lenient standard" and "success" under this expansive definition may encompass a number of diverse results. *See, e.g.*, Perconti, *supra*, 2002 Del. Ch. LEXIS 51 at *10, *27-*28 (recognizing "lenient standard" for "success" under § 145(c) and finding that prosecutor's decision to dismiss criminal charges following mistrial rendered former officer "successful" under § 145(c) for purposes of entitlement to indemnification for defense costs); Waltuch, *supra*, 88 F.3d at 96 (recognizing that under § 145(c), "[e]scape from an adverse judgment or other detriment, for whatever reason, is determinative," court held that former officer was entitled to indemnification for defense costs after claims against former officer and corporation were settled by corporation paying $35 million; also noting that "a director or officer who is able to defeat an adversary's claim by asserting a technical defense is entitled to indemnification under § 145(c).").[5] Thus, there are many different potential outcomes to this litigation that would entitle Paxton to indemnification.

Second, Section 145(c) explicitly allows for recovery not only when the defendant officer or director has been "successful" on the entire matter, but even when he has succeeded just "in defense of any claim, issue or matter therein." Therefore, Paxton would be entitled to some measure of indemnification under § 145(c) even if Symbol and Telxon were to prevail on all but a single claim or issue. *See, e.g.*, MCI Telecom. v. Wanzer, *supra*, 1990 Del. Super. LEXIS 222 at *27-*32, *37 (former director, sued by corporation on four counts, who prevailed on three of

---

[5]    In fact, it is even an open question under Delaware law whether a former officer or director who has paid a "nuisance value" settlement, without an admission of liability, to resolve claims against him could be considered "successful on the merits or otherwise" under § 145(c). *See* VonFeldt v. Stifel Corp., 1999 Del. Ch. LEXIS 131 at *15-*16 (Del. Ch. June 11, 1999) (Attachment E) (noting in dicta that "room might exist [under § 145(c)] for recognizing that dismissal with prejudice with the payment of nominal consideration, amounting perhaps to the nuisance value of the suit, is an appropriate understanding of the phrase 'success on the merits or otherwise.'"); Waltuch, *supra*, 88 F.3d at 96, n. 12 ("In a civil suit for damages . . . there is a monetary continuum between compete success (dismissal of the suit without any payment) and complete failure (payment of the full amount of damages requested by the plaintiff). Because [the former officer seeking indemnification] made no payment in connection with the dismissal of the suits against him, we need not decide whether a defendant's settlement payment automatically renders that defendant "unsuccessful" under § 145(c).").

them but was found liable on fourth count, breach of fiduciary duty, in amount of $1 million, still entitled to indemnification under § 145(c) for attorneys' fees incurred in successful defense of other three claims); Merritt-Chapman & Scott Corp. v. Wolfson, 321 A.2d 138, 141 (Del. Super. 1974) ("[Section 145(c)] does not require complete success. It provides for indemnification to the extent of success 'in defense of any claim, issue or matter' in an action. Claimants are therefore entitled to partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count.").

Based upon Section 145(c) alone, therefore, Paxton respectfully submits that Symbol's Motion to Dismiss must be denied.

**D.     In Addition To Delaware Code Title 8 Section 145(c), Symbol And/Or Telxon Would Be Required To Indemnify Paxton Under Section 145(b) If Symbol And/Or Telxon Were To Prevail On Some Of Their Claims Against Paxton But Failed To Carry Their Burden Of Proving That Paxton Did Not Act In "Good Faith."**

As acknowledged above, Section 145(b) provides that an otherwise qualified officer or director of a corporation may not recover indemnification from the corporation for liability resulting from a suit brought, as here, against the officer or director by (or in the right of) that corporation unless the officer or director "acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation . . . ." Symbol's argument that Paxton therefore cannot qualify for indemnification of the claims Symbol and Telxon assert in this case does not follow, however.

Symbol heavily emphasizes Section 145(b)'s "good faith" requirement for indemnification and urges the Court to dismiss Paxton's Counterclaim because the claims Symbol and Telxon have asserted against Paxton allegedly necessarily rest upon a finding of bad faith. (Symbol's Memo. in Support at 6-9) Symbol's argument presupposes, however, that it

will "win," *i.e.*, be able to prove what, at this point, are merely allegations. Even if Symbol were to "win," moreover, Symbol's claim that Paxton automatically could not receive indemnification (because his lack of good faith supposedly would be inherent in such a ruling) is overly simplistic and similarly mistaken.

Symbol's argument fails to recognize that there could be several different outcomes to this litigation short of total victory for Symbol and Telxon. First, while Paxton firmly believes that he will prevail on all of Symbol's and Telxon's claims against him, it is certainly possible, at this early stage of the proceedings, to conceive of a result in which Symbol and/or Telxon prevail on some issues or claims but not on others. For example, Paxton might prevail on the fraud and fiduciary duty claims yet still be found, under some other legal theory, to be liable to Symbol and/or Telxon for contribution towards sums either company is found to owe to Crumpler. Or, perhaps the evidence might ultimately show that while Paxton exceeded his authority as Symbol and Telxon have alleged, his actions were unwitting, *i.e.*, without knowledge that they "exceeded his authority," and thus were taken in "good faith."[6]

In this regard, it is important to recognize that in indemnification actions under Delaware law, where the corporation has undertaken the responsibility that it "shall indemnify [officers and directors] to the full extent authorized by law," the burden of demonstrating bad faith lies with the corporation seeking to escape from its mandatory indemnification duty. <u>VonFeldt v. Stifel Financial Corp.</u>, *supra*, 1999 Del. Ch. LEXIS 131 at *10. In <u>VonFeldt</u>, the court explained that:

> By using the phrase "shall indemnify," the bylaw not only mandates indemnification; it also **effectively places the burden on**

---

[6] For example, Symbol repeatedly makes bald pronouncements such as "Paxton could not reasonably have believed that his actions were in Telxon's best interests" and "No person could reasonably believe such actions would benefit the corporation and, clearly, Paxton did not believe that." (Symbol's Memo. in Support at 8) These are merely factual assertions at this point, however; assertions which have been *denied* by Paxton in his Answer to Symbol's and Telxon's Third-Party Complaint against him. At best therefore, these are disputed issues of material fact which cannot be resolved upon a Rule 12(b)(6) motion to dismiss.

> Stifel to demonstrate that the indemnification mandated is not required. . . .   To overcome this self-imposed, mandatory obligation on Stifel's part, Stifel must demonstrate to this Court why it should not be required to indemnify VonFeldt.   Such a reading of the bylaw is consistent with the statute, which allows the corporation to expand the range of indemnification.   This interpretation, however, does not discharge the good faith requirement; it only shifts the burden on this issue to the corporation.

Id., 1999 Del. Ch. LEXIS 131 at *10 (emphasis added); see also, Green v. Westcap Corp., supra, 492 A.2d at 264 (rejecting corporation's argument that officer or director is not entitled to indemnification under § 145(c) unless he has proved absence of wrongdoing).  Because a "split decision" is possible, and because Symbol and Telxon must bear the burden of proving Paxton's alleged "bad faith," dismissal of Paxton's Indemnification Counterclaim is not appropriate.

**E.      Even If Symbol And/Or Telxon Were To Prevail On All Of Their Claims Against Paxton, The Court Still Has Discretion Under Section 145(b), "In View Of All The Circumstances Of The Case," To Find That Paxton Is Fairly And Reasonably Entitled To Indemnity For Such Expenses As The Court May Deem Proper.**

Additionally, even in the unlikely event that Symbol and Telxon were to prevail on *all* of their claims against Paxton, Delaware law still would not entirely preclude Paxton from indemnification for his expenses.  While Section 145(b) provides, in the portion quoted by Symbol, that "no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation," that provision continues on to state, in language omitted by Symbol (see Symbol's Memo. in Support at 5): "**unless** . . . the court in which such action or suit was brought shall determine upon application that, **despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity** for such expenses which the . . .

16

court shall deem proper." Because "all the circumstances of the case" are not and cannot be known at the outset, Symbol's Motion to Dismiss should be denied for this reason as well.

    F.    **Symbol's Argument That Paxton's Counterclaim For Indemnification Is Barred By His Failure To Sign An "Undertaking" Confuses The Separate Claim For Advancement Of Expenses Under Section 145(e) -- Which Paxton Has Not (Yet) Made -- With A Claim For Indemnification Under Sections 145(b) And/Or (c), Which Contain No Such Requirement.**

Lastly, Symbol mistakenly asserts that Paxton's Counterclaim for indemnification is "premature" because he has not yet signed what Delaware law refers to as an "undertaking." (Symbol's Memo. in Support at 9)  Once again, Symbol has misread the Delaware Code and, as with the "good faith" issue discussed above, seeks to transpose a requirement from one subsection of Section 145 to another.  Symbol's argument is meritless and should be rejected.

A claim for indemnification and a claim for advancement are entirely separate claims which are properly asserted under different sections of the Delaware Code.  Sections 145(b) and (c) of Title 8 of the Delaware Code have been set forth above.  Plainly, there is no mention in either of those sections of a requirement to provide an "undertaking" prior to asserting a claim for indemnification.  Section 145(e), on the other hand, expressly provides that:

> **Expenses (including attorneys' fees) incurred by an officer or director in defending any civil . . . action**, suit or proceeding **may be paid by the corporation in advance** of the final disposition of such action, suit or proceeding **upon receipt of an undertaking** by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation . . . .

*See also*, <u>VonFeldt v. Stifel Financial Corp.</u>, 714 A.2d 79, 86 fn. 28 (Del. 1998) (mandate to indemnify does not include duty to advance litigation expenses); <u>Waltuch</u>, *supra*, 88 F.3d at 94-95 (mentioning "non-indemnification rights, such as advancement rights"); 8 Del. Code § 145(k)

(granting jurisdiction to the Delaware Court of Chancery to hear and determine "all actions for advancement of expenses **or** indemnification brought under this section . . .").

Similarly, the Merger Agreement between Symbol and Telxon also separately addresses indemnification and advancement claims. Section V.6(a), quoted above, first sets forth Symbol's mandatory indemnification obligation to former directors like Paxton. The Merger Agreement then goes on to provide that:

> **Without limiting the generality of the preceding sentence,** in the event any Indemnified Person becomes involved in any Claim, after the Effective Time, **Parent shall cause the Surviving Corporation to periodically advance to such indemnified person its legal and other expenses** (including the cost of any investigation and preparation incurred in connection therewith), **subject to the providing by such Indemnified Person of an undertaking to reimburse all amounts so advanced** in the case of a final nonappealable determination by a court of competent jurisdiction that such Indemnified Person is not entitled to be indemnified therefor.

Just as in the Delaware Code itself, the requirement to provide an "undertaking" is set forth only in relation to an advancement demand and has no bearing on a straight indemnification claim.[7]

Thus, by the plain terms of the controlling statute as well as the Merger Agreement, an "undertaking" is required only when an officer or director asserts a claim for "advancement" under § 145(e). This makes sense, of course, because a claim for advancement requires a corporation to pay to an officer certain expenses incurred in the course of defending an action *in advance* of the conclusion of same, *i.e.*, before it is known whether the officer will ultimately be entitled to indemnification. *See, e.g.*, Reddy v. Electronic Data Systems Corp., 2002 Del. Ch. LEXIS 69 at *29 (Del. Ch. June 18, 2002) (Attachment F) (noting, in granting summary

---

[7]    One significant difference between the Merger Agreement and Section 145(e) is that while advancement is merely permissive under Section 145(e) -- expenses "may be paid by the corporation in advance" -- the Merger Agreement creates a mandatory duty of advancement: Symbol "shall cause [Telxon] to periodically advance to such Indemnified person its legal and other expenses . . . ."

judgment to former employee on advancement claim, that "authorization of advancement rights presupposes that the corporation will front expenses before any determination is made of the corporate official's ultimate right to indemnification."); <u>Ridder v. Cityfed Financial Corp.</u>, 47 F.3d 85, 87 (3rd Cir. 1995) ("Under Delaware law, [the defendants'] right to receive the costs of defense in advance does not depend upon the merits of the claims asserted against them"); <u>Dunlap v. Sunbeam Corp.</u>, 1999 Del. Ch. LEXIS 126 (Del. Ch. June 23, 1999) (Attachment G) (granting former officers' claims for advancement of attorneys' fees). It is therefore logical and reasonable to require the officer receiving such advancements to acknowledge his obligation to repay same should he ultimately be found not entitled to indemnification.

In an indemnification action under §§ 145(b) and/or (c), on the other hand, there is no requirement to provide an "undertaking" prior to asserting a claim for indemnification for the obvious reason that *nothing is paid in advance*; no funds are transferred from the corporation to the officer as indemnification for liability or expenses unless and until the court has determined that the officer is entitled to such. Since there is no "advancement," there is no possibility of being required to repay the funds and thus no need for an "undertaking."

In the instant matter, Paxton has not (yet)[8] made a claim for advancement of litigation expenses as allowed by the above-quoted portion of the Merger Agreement and Section 145(e) of Title 8 of the Delaware Code. Therefore, because Paxton's current Counterclaim asserted only an indemnification claim against Symbol, not a claim for advancement, Symbol's argument that Paxton's Counterclaim fails due to the lack of an undertaking must be rejected.

---

[8] In the Amended Counterclaim that Paxton is filing, Paxton is not only adding Telxon as a counter-defendant but also asserting an additional claim, based upon Section V.6(a) of the Merger Agreement and Section 145(e) of Delaware law, for advancement of litigation costs including attorneys' fees. As properly required by such a claim, Paxton is attaching to the Amended Counterclaim a copy of the undertaking that he sent to both Symbol and Telxon via Certified Mail on October 1, 2002.

## III.    <u>CONCLUSION</u>

For each and all of the foregoing reasons, Third-Party Defendant John W. Paxton, Sr. respectfully submits that Third-Party Plaintiff Symbol Technology, Inc.'s Motion to Dismiss should be denied.

Respectfully submitted,

Michael A. Manzler (0059966)
Deborah DeLong  (0014174)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8200

Trial Attorneys for Third-Party Defendant
    John W. Paxton, Sr.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Opposition to Third-Party Plaintiff Symbol Technology, Inc.'s Motion to Dismiss was served upon Drew A. Carson, Attorney for Defendants/Third-Party Plaintiffs, at Goodman Weiss Miller LLP, 100 Erieview Plaza, 27th Floor, Cleveland, Ohio 44114-1882, and Robert A. McMahon, Attorney for Plaintiff, at Eberly McMahon Hochscheid LLC, 3700 Eastern Avenue, Cincinnati, Ohio 45226, by regular United States Mail this 30th day of September, 2002.

Michael A. Mayles

#828070