UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HUGHETTE CRUMPLER, | : | Case No. C-1-02-131 |
| | : | |
| Plaintiff, | : | (Judge Susan J. Dlott) |
| | : | |
| v. | : | |
| | : | |
| TELXON CORPORATION et al., | : | |
| | : | **PLAINTIFF HUGHETTE CRUMPLER'S** |
| Defendants/Third-Party Plaintiffs, | : | **AND THIRD-PARTY DEFENDANT JOHN** |
| | : | **W. PAXTON, SR.'S JOINT MOTION (1) TO** |
| v. | : | **STRIKE CERTAIN AFFIDAVITS AND** |
| | : | **EXHIBITS SUBMITTED BY DEFENDANTS** |
| JOHN W. PAXTON, SR., | : | **TELXON CORPORATION AND SYMBOL** |
| | : | **TECHNOLOGIES, INC., AND (2) FOR AN** |
| Third-Party Defendant. | : | **AWARD OF REASONABLE EXPENSES** |
| | : | **UNDER FED. R. CIV. P. 56(g)** |
| | : | |

Pursuant to Federal Rule of Civil Procedure 56, and for the various and multiple reasons set forth in the attached Memorandum in Support, Plaintiff Hughette Crumpler and Third-Party Defendant John W. Paxton, Sr. jointly move the Court for an Order striking (a) twelve of the thirteen affidavits (so-called "Declarations") filed by Defendants Telxon Corporation and Symbol Technologies, Inc. in alleged support of their Memorandum in Opposition to Crumpler's and Paxton's separate Motions for Summary Judgment, and (b) all "exhibits" attached to those twelve affidavits. Specifically, the affidavits which should be stricken are those of (1) Norton Rose, (2) Raj Reddy, (3) Margaret Pais, (4) Gary Grand, (5) Edward Chung, (6) Cecile Hickman, (7) Glenn Hansen, (8) Walter Siegel, (9) Ketki Patel, (10) Bridgette Huerkamp, (11) Daryl Kochy, and (12) Robert A. Goodman. As detailed in the accompanying Memorandum in Support, each of these affidavits and accompanying documents is improper because either the witness/document was not disclosed/produced to Crumpler or Paxton during discovery, the

affidavit consists of hearsay and conclusory speculation, the affidavit contradicts and/or misrepresents the terms of written company policies, the affidavit rewrites the affiant's deposition testimony, and/or (in the case of Goodman) Defendants promised not to use the witness in order to avoid disqualification of defense firm Goodman Weiss Miller LLP.

Crumpler and Paxton also jointly request, pursuant to Fed. R. Civ. P. 56(g), that the Court award them their reasonable expenses incurred in filing and litigating this Motion to Strike due to Telxon's and Symbol's bad faith submission of the clearly impermissible affidavits and other materials identified herein.

Respectfully submitted,

 /s/ Robert A. McMahon
Robert A. McMahon (0064319)
Eberly McMahon Hochscheid LLC
3700 Eastern Avenue
Cincinnati, Ohio 45226
(513) 533-3441
bmcmahon@emh-law.com

Trial Attorney for Plaintiff Hughette Crumpler


 /s/ Michael A. Manzler
Michael A. Manzler (0059968)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 977-8693
Michael.manzler@dinslaw.com

Trial Attorney for Third-Party Defendant
    John W. Paxton, Sr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HUGHETTE CRUMPLER, | : | Case No. C-1-02-131 |
| | : | |
| Plaintiff, | : | (Judge Susan J. Dlott) |
| | : | |
| v. | : | |
| | : | |
| TELXON CORPORATION et al., | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **PLAINTIFF HUGHETTE CRUMPLER'S** |
| Defendants/Third-Party Plaintiffs, | : | **AND THIRD-PARTY DEFENDANT JOHN** |
| | : | **W. PAXTON, SR.'S JOINT MOTION (1) TO** |
| v. | : | **STRIKE CERTAIN AFFIDAVITS AND** |
| | : | **EXHIBITS SUBMITTED BY DEFENDANTS** |
| JOHN W. PAXTON, SR., | : | **TELXON CORPORATION AND SYMBOL** |
| | : | **TECHNOLOGIES, INC., AND (2) FOR AN** |
| Third-Party Defendant. | : | **AWARD OF REASONABLE EXPENSES** |
| | : | **UNDER FED. R. CIV. P. 56(g)** |
| | : | |

I.    **INTRODUCTION**

On July 31, 2003, Plaintiff Hughette Crumpler ("Crumpler") filed a Motion for Summary Judgment on all of her claims against Defendants/Third-Party Plaintiffs Telxon Corporation ("Telxon") and Symbol Technologies, Inc. ("Symbol") (collectively, "Defendants"). (Doc. 30) On August 1, 2003, Third-Party Defendant John W. Paxton, Sr. ("Paxton") filed a Motion for Summary Judgment with respect to both Defendants' claims against him and his Counterclaims against Defendants. (Doc. 32) Telxon and Symbol filed a combined Memorandum in Opposition to both summary judgment motions on September 19, 2003. (Doc. 45) In support of their opposition memorandum, however, Defendants also submitted an "Appendix" containing, *inter alia*, thirteen affidavits (titled "Declarations") and numerous attached exhibits. For the specific reasons detailed below pertaining to each individual affidavit, twelve of the thirteen affidavits merit striking by the Court, along with all of the exhibits attached to those affidavits.

## II.    ARGUMENT

### A.    Twelve Of The Affidavits Submitted By Defendants -- From Rose, Reddy, Pais, Grand, Chung, Hickman, Hansen, Siegel, Patel, Huerkamp, Kochy And Goodman -- As Well As The Exhibits Attached To Those Twelve Affidavits Should Be Stricken From The Record Because The Witnesses Were Not Disclosed, The Attached Documents Were Not Produced, The Affidavits Consist Of Speculation And Hearsay, The Affidavit Conflicts With The Affiant's Deposition Testimony And/Or The Witnesses' Statements Are Otherwise Inadmissible Or Improper.

It is well established and universally recognized that: "Under Fed. R. Civ. P. 56(e), affidavits submitted in opposition to a summary judgment motion shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See, e.g.*, Monks v. General Electric Co., 919 F.2d 1189, 1192 (6th Cir. 1990) (internal quotations deleted). Likewise, an unsworn affidavit may not be considered by the Court on summary judgment. Pollock v. Pollock, 154 F.3d 601, 611 n.20 (6th Cir. 1998). Nevertheless, Defendants have violated these well known requirements with respect to no less than twelve of the thirteen affidavits they have submitted in purported support of their memorandum in opposition to summary judgment. For the specific reasons which follow, each of these twelve affidavits should be stricken from the record and disregarded by the Court for purposes of ruling upon Crumpler's and Paxton's Motions for Summary Judgment.

### 1.    The Norton Rose Affidavit and Attached Exhibit

The Rose affidavit, and attached exhibit, should be stricken on several grounds. First, the affidavit is neither notarized nor dated. As the Sixth Circuit has made clear, a summary judgment affidavit must be notarized, unless the affiant seeks to verify their affidavit under 28 U.S.C. § 1746. *See* Little v. BP Exploration & Oil Co., 265 F.3d 357, 363 n.3 (6th Cir. 2001);

Zainalian v. Memphis Bd. of Ed., 2001 U.S. App. LEXIS 2269 at *5 (6th Cir. Feb. 5, 2001)
(Attachment A hereto).  Section 1746 requires that an affidavit be dated,[1] which did not occur
here.  Accordingly, the Rose affidavit should be stricken from the record, and cannot be
considered by the Court in its summary judgment analysis.  *Accord* Little, at id.

Second, the affidavit plainly contains assertions beyond Rose's personal knowledge.
Specifically, Rose left Telxon's Board of Directors in August of 1999.  (Rose Dec., ¶ 1)  He
nevertheless opines regarding the "practices and policies" of Telxon despite the fact that he could
not have any personal knowledge of same at the *relevant* time: when Crumpler was hired in June
of 2000.  It is particularly important to note that, between the time Rose left and Crumpler was
hired, new directors comprised a majority of Telxon's Board.  (*See* Paxton Dep. at 6-7; Hone
Dep. at7-8; Garwood Dep. at 8; Pltf. Exh. II at 000696-697, 000729-732, 000775)  Thus, Rose's
statements are either speculative or, if based on what someone else told him, hearsay.  Either
way, they are inadmissible and may not be considered in opposition to summary judgment.

Rose's affidavit contains other speculative statements as well.  In paragraph five of the
affidavit, for example, Rose states, referring to Crumpler's position of Vice President of
Administration and Organizational Development, that, "[s]uch an office, had it been created,
*would have* been involved in the formulation of company policies . . . ."  (Rose Dec., ¶ 5)
(emphasis added).  Again, the use of the term "would have," coupled with the fact that Rose had
been gone from Telxon for over nine months before Crumpler was hired, clearly reveals the
speculative nature of Rose's statements and reflects that his affidavit is based more on what
Telxon and Symbol wanted him to say than upon any personal knowledge of his own, as is

---

[1]    Section 1746 provides, in relevant part, that the affidavit must contain the following: "I declare (or certify, verify,
    or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  28 U.S.C. § 1746.
    An affidavit, written pursuant to § 1746, thus must be dated.  *See* United States v. Streck, 2003 U.S.App. LEXIS
    5745 at *4-*5 (6th Cir. Mar. 20, 2003) (Attachment B hereto).

required by F.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

Other portions of the Rose affidavit are nothing more than inadmissible hearsay as well. For example, Rose offers that: "To the best of my recollection, the Board and its counsel communicated the policies and practices of its Compensation Committee to Mr. Paxton, including the requirement for Compensation Committee approval of employment and remuneration agreements and severance packages with senior management . . . ." (Rose Dec., ¶ 8)  This equivocal statement is hearsay because Telxon and Symbol are offering the alleged out-of-court statements (by unidentified parties, no less: "the Board" and/or its "counsel") -- that Paxton was "required" to obtain approval from the "Compensation Committee" before hiring "senior management" -- to prove the truth of the matter asserted, that Paxton was so constrained. A summary judgment affidavit cannot contain hearsay.  See Monks, 919 F.2d at 1192; F.R.Civ.P. 56(e).  Summary judgment affidavits containing hearsay must be disregarded by the Court.  Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 968 (6th Cir. 1990).

Finally, Defendants may not use conclusory testimony in Rose's affidavit to contradict corporate records.  Telxon's official, written corporate By-Laws specify the restrictions imposed by the corporation on its CEO with respect to the hiring of non-Executive Officers such as Crumpler.  (Pltf. Ex. A, Article III)  Rose's conclusory testimony about amorphous "practices and policies" of a Board committee flies in the face of Telxon's corporate by-laws.  As Judge Dowd recognized in another proceeding between Telxon and Paxton, all such testimony is inadmissible and should not be considered on summary judgment.  (See Attachment A to Paxton's Reply Brief)  For all of these reasons, the Court should strike the Rose affidavit.

### 2.    **The Raj Reddy Affidavit**

The Reddy affidavit must be stricken and disregarded for many of the same reasons as the Rose affidavit, most prominently because it is rife with hearsay. For example paragraphs 2 and 3 purport to recite what was "communicated" to various CEOs at Telxon. Assertions about unidentified communications by unnamed individuals are plainly inadmissible under Rule 56. Additional inadmissible hearsay is found in paragraphs 4, 11, 13-16, 18 and 19, where Reddy refers to alleged "practices and policies" limiting Paxton's conduct. Despite significant discovery on this issue, there is absolutely no evidence of any such practices or policies in the record. Rather, the only admissible evidence in the record is Telxon's written By-Laws. Again, the Court should not consider conclusory testimony from Reddy or any other witness that is inconsistent with the corporate records before the Court. Similarly, Reddy may not speculate as to what Paxton or anyone else (*e.g.*, Pais or Hansen) did or did not tell "the Board" or "the Compensation Committee." At best, Reddy might be allowed to testify as to what Paxton, Pais and/or Hansen said to *him*. Reddy's affidavit does not satisfy even this threshold requirement.

Reddy's affidavit is also inadmissible to the extent that it refers to documents not disclosed in response to Crumpler's and Paxton's discovery requests nor otherwise before the Court on the pending motions. For example, in paragraphs 2 and 3 of his affidavit, Reddy refers to Telxon's proxy statements as a source of alleged restrictions on Paxton's conduct. Telxon and Symbol have never produced any proxy statements in discovery. As such, it is clearly inappropriate for Reddy (or any witness) to refer to or rely upon such documents.

### 3.    **The Margaret Pais Affidavit and Attached Exhibits**

The Sixth Circuit has clearly and repeatedly warned that a witness may not try to "fix" or "improve" her deposition testimony by later giving different testimony in an affidavit in

opposition to a summary judgment motion.  *See, e.g.*, Penny v. United Parcel Serv., 128 F.3d 408, 416 (6th Cir. 1997); Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986). When an affiant attempts to do so, the Court must disregard the summary judgment affidavit in question, and the non-moving party may not rely on the affidavit to create a genuine issue of material fact.  Penny, 128 F.3d at 416.   Because that is exactly what Pais's affidavit attempts to do here, it must be stricken and disregarded.

In her summary judgment affidavit, Pais, Telxon's former Vice President of Human Resources, now claims for the first time that "During my tenure at Telxon, the company's policy and practice *required approval by the Compensation Committee* of the Board of Directors of all officer hires and remuneration arrangements with officers of the company . . . ."  (Pais Dec., ¶ 2)[2] (emphasis added).   Pais's affidavit further states that Paxton hired Crumpler "without my knowledge and the approval of the Compensation Committee of the Board of Directors," thereby implying that such approval was required before he hired Crumpler.  (Pais Dec., ¶ 9)  To further reinforce that suggestion, Pais adds in her affidavit that "In late July of 2000, I confronted Mr. Paxton via telephone over the issue of the lack of organizational communication regarding the hire of Ms. Crumpler and the fact that company policy and practice with regard to the hiring of new officers of the company was not followed in the case of Ms. Crumpler."  (Pais Dec., ¶ 12)

All of these statements are different from and conflict with Pais's sworn deposition testimony.  For example, Pais gave the following unequivocal testimony during her deposition:

> Q:     [by Mr. McMahon]   Do you have any knowledge or information or evidence to suggest that Mr. Paxton lacked the authority to hire Hughette Crumpler?

---

[2]   As Paxton pointed out in his Reply Brief in Support of Summary Judgment, Pais's affidavit statement on this point is also irrelevant due to the undisputed facts that (a) Crumpler was not an "officer" of Telxon as defined in the corporation's By-Laws and (b) a committee of the Board lacks the authority to impose "practices and policies" inconsistent with, or otherwise amend, the By-Laws.

A:      No.

Q:      Do you know anyone who has knowledge or information or evidence that would suggest that Mr. Paxton lacked the authority to hire Hughette Crumpler?

A:      No.

(Pais Dep. at 63)  Pais confirmed this testimony later in her deposition, moreover, when she was asked, with regard to Crumpler's hiring:

Q:      And do you agree that Mr. Paxton had a right to bring that person [*i.e.*, Crumpler] in?

A:      Absolutely.  I agree.

(Pais Dep. at 98)  In a series of follow-up deposition questions, Pais further confirmed her absence of knowledge regarding any policy limiting or prohibiting Paxton from setting Crumpler's employment compensation, benefits or terms:

Q:      [by Mr. McMahon]   Do you have any knowledge or information to suggest that it was required for Mr. Paxton to present Hughette Crumpler's employment package to the Compensation Committee?

        Pais's Counsel: Objection.

Q:      Go ahead.

A:      I don't have knowledge that it was required, a written requirement, no.  It was a practice.

Q:      Was it an informal requirement?

        Pais's Counsel: Objection.

A:      Again, it was a practice.

Q:      But the answer to my question is no, it was not a requirement, whether informal or formal?

A:      I don't know.  I don't know.

(Pais Dep. at 62-63)

7

Pais's answers to all of these questions conflict with her newly-submitted affidavit statements, which assert for the first time that Paxton did not have authority to hire Crumpler and violated an alleged "practice and policy" by doing so without first obtaining approval from the Compensation Committee. The Sixth Circuit flatly prohibits such revisionist attempts to manufacture a question of fact after the witness has been deposed.

With respect to the documents attached to Pais's affidavit, the Court should strike and disregard Exhibits B, C and F because Defendants did not produce those documents in discovery. Telxon and Symbol cannot now introduce documents that they withheld from production in discovery. The Court also should strike Exhibit E because the handwritten note thereon constitutes speculation and hearsay. Pais lacks personal knowledge about what was presented to Telxon's Board for approval; no evidence suggests that she attended every Board meeting. Pais cannot cite to her own speculative note as alleged proof of what was submitted to the Board.

Finally, all of Pais's testimony about Telxon's alleged policies and procedures relating to hiring and relocation agreements is inadmissible hearsay. Pais, like the other witnesses addressed above, cannot offer conclusory testimony that contradicts corporate records such as the By-Laws and Telxon's written Relocation Policy. Pais's conflicting affidavit, and the exhibits attached to that affidavit, should therefore be stricken from the record and disregarded by the Court on summary judgment.

### 4.    The Gary Grand Affidavit

The Gary Grand affidavit submitted by Defendants likewise contains inadmissible hearsay relating to similar subject matter. For example, Grand claims that, "While I served as the company's Assistant Corporate Controller . . . , Margaret Pais . . . communicated to me that company policy and practice required approval by the Compensation Committee of the Board of

Directors . . . ."  (Grand Dec., ¶ 2)  Because Grand's affidavit is offering alleged out-of-court statements by Pais and Telxon's CFO to prove the truth of the matters supposedly asserted by them, it is inadmissible hearsay under Fed. R. Evid. 801(c).

Grand's affidavit also must be stricken because it refers in conclusory fashion to unidentified "accounting records" for 1998, 1999 and 2000 that Telxon and Symbol never produced in discovery -- or even now.  That testimony is inadmissible hearsay devoid of any foundation.  The same is true of Grand's reference in paragraph 6 of his affidavit to monies paid by Telxon to investment banking consultants.  Not only is that information entirely irrelevant to Telxon's contractual relationship with Crumpler -- the legitimacy of which has been acknowledged by Pais herself -- but none of that information (or alleged underlying documents) has ever been produced or otherwise made part of the record before the Court.

Grand's affidavit thus cannot be considered as evidence of Telxon's policies and practices or financial dealings and should be stricken from the record.

### 5.    The Edward Chung Affidavit and Attached Exhibits

The affidavit that Defendants procured from Edward Chung, a New York attorney who represented Symbol during its merger negotiations with Telxon, and the exhibits attached thereto, must be stricken on two grounds.  First, the Chung affidavit is not dated.  (*See* Chung Dec. at p. 2)  Pursuant to <u>Zainalian</u>, *supra*, and 28 U.S.C. § 1746, an undated affidavit cannot be considered by a court on summary judgment.

Second, even if Chung had dated his affidavit, it would be inappropriate and inequitable for Defendants to attempt to use him as an affiant, given that he was not previously disclosed during discovery.  Specifically, Chung was not identified in Defendants' Rule 26(a) Initial Disclosures as an individual likely to have knowledge of the facts of this case.  (*See* Attachment

C hereto)  Chung also was not identified in Defendants' Answers to Third-Party Defendant's Interrogatory No. 1, which required Defendants to identify all persons "known or believed to have knowledge regarding any of the allegations contained in any paragraph of Plaintiff Hughette Crumpler's Complaint." (*See* Attachment D hereto)  Likewise, Defendants failed to identify Chung in their Answers to Plaintiff's Interrogatories No. 18, 19 or 20, which directed Defendants to identify all persons with knowledge of the facts of this case. (*See* Attachment E)

As an attorney representing Symbol during the merger with Telxon, Chung apparently had knowledge relating to certain aspects of this litigation, such as the status of negotiations between Telxon and Symbol and alleged obligations that Telxon claims it had thereunder. Clearly, if he had knowledge of facts relating to this case, as Defendants now claim he has, he should have been identified during discovery.  Defendants' failure to identify Chung during the discovery process deprived Crumpler and Paxton of the opportunity to depose him.  Now that discovery has ended, it is unfair and inequitable to permit Defendants to identify Chung for the first time, and use him as an affiant on summary judgment for any purpose.  *See* Anderson v. Creighton 483 U.S. 635, 658 (1987); First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 525 (6th Cir. 2002).

An additional basis to strike Chung's affidavit is that Telxon and Symbol failed yet again to produce the referenced exhibits in discovery.  While Telxon and Symbol did attach alleged portions of the merger agreement to the Third-Party Complaint against Paxton, they did not produce the entire merger agreement and all schedules and attachments during discovery, nor did they produce "Amendment No. 1 to a Form S-4 Registration Statement."  As such, Telxon and Symbol cannot rely upon documents withheld from production in opposition to Crumpler and Paxton's well-founded motions for summary judgment.

6.     **The Cecile Hickman Affidavit**

The Hickman affidavit, like the others, contains conclusory statements that contradict corporate records, lack foundation, and otherwise constitute inadmissible hearsay.  Hickman cannot offer conclusory assertions that contradict Telxon's written Relocation Policy that is part of the evidentiary record before this Court.  All of her statements to the contrary must be stricken, as the written Relocation Policy speaks for itself and is the best evidence of Telxon's policies -- not Hickman's unsupported and conflicting testimony.  *See, e.g.*, Ridgway v. Ford Dealer Computer Services, Inc., 114 F.3d 94, 98 (6th Cir. 1997) (under F.R.E. 1002, best evidence of policy is written policy itself, not others' oral characterization of same).

Moreover, there is no foundation for Hickman's absurdly vague testimony that she "had personal knowledge that certain employment related documents, such as change-in-control agreements, had been backdated . . . ."  (Hickman Dec., ¶ 12)  Hickman offers no evidence to support this conclusion.  What evidence she does mention -- "a list of employees" -- is inadmissible hearsay because no such document has been produced, is attached to Hickman's affidavit, or is otherwise in the record before this Court.  The Court must strike and disregard all such asertions in Hickman's affidavit.

7.     **The Glenn Hansen Affidavit and Attached Exhibits**

The Court should strike and disregard Hansen's affidavit for many of the same reasons previously discussed.  Hansen cannot offer conclusory testimony about "corporate policy and practice" without further support, especially when that testimony contradicts corporate records before the Court.  In addition, Hansen cannot testify about yet another document (Exhibit A to his affidavit) that Telxon and Symbol failed to produce in discovery.

### 8.      The Walter Siegel Affidavit and Attached Exhibit

The Siegel affidavit and attached exhibit likewise should be stricken because Siegel, Telxon's Vice President, was never identified as a person with knowledge of the facts of this case during discovery.  (*See* Attachments C, D, E).  Had Siegel been disclosed during discovery, and his alleged knowledge of relevant facts summarized, Crumpler and Paxton would have had the opportunity to depose him and obtain discovery.  Defendants should be barred from relying on Siegel's belated testimony on summary judgment when Defendants should have identified Siegel during discovery, but failed to do so.  *See* First Bank of Marietta, *supra*.

Moreover, there is no record that Telxon and Symbol ever produced to Crumpler and Paxton the Board minutes attached as Exhibit A to Siegel's affidavit.  This is yet another example of Telxon and Symbol trying to use documents and witnesses not produced or identified in discovery to oppose Crumpler and Paxton's well-founded motions for summary judgment. The Court must strike and disregard Siegel's affidavit and the exhibit thereto.

### 9.      The Ketki Patel Affidavit and Attached Exhibits

Ketki Patel states he is the Assistant Manager for a Holiday Inn Express hotel in Milford, Ohio.  (Patel Dec., ¶ 1)  Defendants seek to use his affidavit statements to authenticate Crumpler's alleged hotel bills.  Given that Patel should have been identified during discovery -- if not initially, at least in Defendants' Answers to Plaintiff's Interrogatories, Defendants' Answers to Third-Party Defendant's Interrogatories, or in a supplemental update thereto -- but never was (*see* Attachments C, D, E), Defendants should be barred from relying on Patel's testimony and/or the attached exhibits in their opposition to summary judgment.

In addition, the documents attached as part of Exhibit A to Patel's affidavit constitute inadmissible hearsay.  There is no evidence before the Court that any of those documents are

12

business records that would fall outside of the hearsay exclusion under FRE 802 or 803. Therefore, Patel's affidavit and attached exhibits must be stricken.

### 10.    The Bridgette Huerkamp Affidavit and Attached Exhibits

Bridgette Huerkamp was Paxton's executive assistant for a few months in 2000, during part of the time that Paxton was Telxon's CEO and Chairman of the Board. (Huerkamp Dec., ¶ 1) Through Heurkamp's conclusory affidavit "testimony," Defendants apparently intended to insinuate that Paxton did not sign certain documents.

The Huerkamp affidavit (and attached exhibits) should be stricken for several reasons. First, Huerkamp was never identified as a person with knowledge of the facts of this case (*see* Attachments C, D, E), thus depriving Crumpler and Paxton of the opportunity to depose her and obtain discovery.

Second, Huerkamp's affidavit is largely based on speculation. Huerkamp states, for example, that Paxton's "signature stamp," which she kept in her desk, "was not used for any type of contract, agreement, or legal document in nature. The signature stamp was used for general correspondence and was rarely used." (Huerkamp Dec., ¶ 3) Huerkamp could not have personal knowledge of these alleged "facts, " however, because she admits that she did not know if anyone else had access to the stamp. (Id., ¶ 2) Presumably Paxton, for one, had access to his own signature stamp, and Huerkamp could not possibly know every occasion on which he may have seen fit to use it (or authorize someone else to do so).

To the extent Defendants are attempting to offer Huerkamp as a witness to refute that Paxton signed Defendant's Exhibit 11 -- an earlier document relating to relocation benefits -- that document has no bearing on Crumpler's contractual claims in this case (because it was never paid, was superceded by Defendant's Exhibit 8, and Crumpler is not suing to enforce it).

(Huerkamp Dec., ¶¶ 5, 8)  Furthermore, Huerkamp's testimony that the signature on Defendant's Exhibit 11 "does not *resemble* Mr. Paxton's actual penned signature" is conclusory and lacks foundation.  There is no evidence before the Court that Huerkamp is qualified, as an expert or otherwise, to opine on Paxton's signature.  She worked for Paxton at Telxon for only six months, which employment ended almost three years before the date of her Declaration in this matter.  (Huerkamp Dec., ¶ 1)  She also admitted that she does not recall seeing the document before being shown it by Defendants' counsel for purposes of soliciting her affidavit.  (Id., ¶ 6), Whether Huerkamp thinks a signature "resembles" Paxton's signature, moreover, is immaterial because Huerkamp is not capable of testifying one way or the other as to whether the signature on Defendants' Exhibit 11 is or is not Paxton's signature.  In any event, Paxton himself testified that it signed the document.  (Paxton Dep. at 150)

### 11.     The Daryl Kochy Affidavit

Daryl Kochy states he is the tax and expense manager for SIRVA Relocation, a third-party relocation company that allegedly provided relocation services to Telxon employees in 2000.  (Kochy Dec., ¶¶ 1-2)  Kochy purports to tell us what Telxon's relocation policy was in 2000.  Obviously, this is hearsay, as the Telxon Relocation Policy is already in the record (Def. Ex. 10) and speaks for itself.  Ridgway, *supra*, 114 F.3d at 98.  Kochy's characterization of or opining relating to Telxon's policy is not admissible, as Judge Dowd recognized in the same context in the proceeding between Telxon and Paxton in the Northern District of Ohio.[3]

---

[3]    As an interesting aside, Kochy's affidavit serves to highlight how meritless Telxon's and Symbol's argument that Paxton did not have "authority" to grant Crumpler relocation benefits really is.  Kochy states that he confirmed his instruction to provide Crumpler with a $75,000 lump-sum relocation benefit "with Telxon personnel known to me to have the authority to authorize, approve and direct this payment." (Kochy Dec., ¶ 4)  From Cecile Hickman's affidavit, we know the person with such "authority" of whom he is speaking was Hickman herself, a lower level Human Resources Manager.  (*See* Hickman Dec., ¶ 5-6)  Obviously, if Hickman had "authority" to approve a lump sum relocation benefit, there is no way that Paxton, the CEO of the company, could not have had such authority.

The Kochy affidavit and attached exhibits also should be stricken because Kochy was never identified as a person with knowledge of the facts of this case in Defendants' Rule 26(a) Initial Disclosures, Defendants' Answers to Plaintiff's Interrogatories, or Defendants' Answers to Third-Party Defendant's Interrogatories. (*See* Attachments C, D, E) Without question, Telxon and Symbol were required to identify Kochy; had they done so, Crumpler and/or Paxton would have had the opportunity to depose or otherwise obtain discovery from him. Defendants should be barred from relying on Kochy's summary judgment testimony when Defendants had an obligation to identify Kochy during discovery, but failed to do so.

### 12.    The Robert Goodman Affidavit and Attached Exhibits

As the Court is already aware, Robert A. Goodman is an attorney with Defendants' counsel's firm, Goodman Weiss Miller LLP ("GWM"), who also served (a) as Telxon's corporate Secretary from 1983 until November 30, 2000, when Telxon merged with Symbol, (b) on Telxon's Board of Directors from 1991 until the merger, and (c) as Telxon's outside counsel. (Goodman Dec., ¶ 1) As Secretary, Goodman recorded and prepared the minutes form the meetings of Telxon's Board of Directors. (Id., ¶ 2)

Based on the fact that Goodman was likely to be called as a witness in this case, and the resulting conflicting of interest between his role as both witness and counsel for Defendants, Crumpler filed a motion to disqualify GWM from representing Defendants in this matter. Although the Court denied that motion, it found, in part, as follows:

> Defendants have stated that they do not intend to call Mr. Goodman at trial. (*See* doc. #23 at 10.) While the Court will not blindly defer to Defendants' decision not to call Mr. Goodman as a witness, the Court cannot say that Mr. Goodman "ought" to testify on Defendants' behalf. Perhaps some members of Telxon's Board will have some relevant testimony on the issue of whether Mr. Paxton had authority to enter into a severance agreement with Plaintiff on behalf of Telxon; Defendants' Initial Disclosures acknowledge this possibility. However, Mr. Goodman is only one of twelve persons who were Telxon board members during

the relevant time period, and the Court has no reason to believe that Mr. Goodman has any special information that the other Board members do not have. His testimony, then, would be cumulative of the testimony of other Board members and thus would be unnecessary.

(Doc. 28 (Order of Jan. 24, 2003) at 6). The Court also explicitly cautioned Defendants that "the Court emphasizes that the choice to call Mr. Goodman as a witness must be made now . . . ." (Id. at 7 n.3) (internal quotation marks and brackets deleted).

Given that the Court's decision not to disqualify GWM was expressly based, in part, upon Defendants' decision *not* to call Goodman as a witness in this case, justice requires that Defendants must be required to abide by their decision and prohibited from using Goodman's statements in opposition to summary judgment. Alternatively, if Defendants insist on attempting to rely upon Goodman's affidavit, and if the Court elects to permit such "evidence" in opposition to summary judgment, Crumpler and Paxton would then respectfully suggest that the Court should reconsider its January 24, 2003 Disqualification Order, and revisit the disqualification issue (upon further briefing if deemed appropriate).

Finally, Goodman should not be permitted to testify about documents (*i.e.*, Exhibit B) that Defendants withheld during discovery. Not only should Telxon and Symbol be barred from relying upon Goodman's testimony when they assured the Court that they had no intention of calling him as a witness, but they certainly cannot use his affidavit to belatedly introduce into evidence documents they failed to produce during discovery.

**B.    Defendants' Submission Of The Above-Detailed Materials In Clear Violation Of The Federal Rules Of Civil Procedure And Well-Established Sixth Circuit Precedent Merits An Award Of Attorneys' Fees And Costs To Crumpler And Paxton Under Fed. R. Civ. P. 56(g).**

Federal Rule of Civil Procedure 56(g) provides that:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for

16

> the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Rule 56(g) thus vests the Court with authority to impose sanctions where summary judgment affidavits are filed in bad faith. Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 875 (6th Cir. 2000); Chambers v. Nasco, Inc., 501 U.S. 32, 62 (1991) (Kennedy, J., dissenting); Klein v. Stahl GMBH & Co., 185 F.3d 98, 110 (3d Cir. 1999).

The facts here reflect that Defendants could not have been acting in good faith. As detailed above, twelve of the thirteen summary judgment affidavits submitted by Defendants are blatantly improper either because they are undated, contain hearsay and speculation unfounded on personal knowledge, were procured from previously undisclosed witnesses, refer to unproduced documents, contradict and/or misrepresent the plain terms of written policies, contravene the affiant's deposition testimony, and/or violate representations made to avoid disqualification. Given that (1) the rules of procedure and legal principles prohibiting the submission of materials such as those Defendants have submitted here are well established, universally known, and would be recognized by any conscientious law student, and (2) over 90 percent of the affidavits submitted by Defendants are in violation of these well known rules, the only reasonable conclusion is that Telxon and Symbol acted in bad faith. An award of costs and fees is thus entirely appropriate and warranted in this instance. *See, e.g.*, Rogers v. AC Humko Corp., 56 F.Supp.2d 972, 981 (W.D.Tenn. 1999) (reckless misrepresentation of facts in affidavit warranted imposition of costs and fees under Rule 56(g)); Acrotube, Inc. v. J.K. Financial Group, Inc., 653 F.Supp. 470, 478 (N.D. Ga. 1987) (awarding costs and fees based on misleading affidavit statements).

III.    **CONCLUSION**

For each and all of the reasons stated above, Plaintiff Hughette Crumpler and Third-Party Defendant John W. Paxton, Sr. jointly request that the Court : (1) strike the Rose, Reddy, Pais, Grand, Chung, Hickman, Hansen, Siegel, Patel, Huerkamp, Kochy and Goodman affidavits; (2) strike all exhibits attached to those twelve affidavits; and (3) award to Crumpler and Paxton, under Fed. R. Civ. P. 56(g), their reasonable expenses incurred in preparing, filing and litigating this Motion to Strike.

Respectfully submitted,


  /s/ Robert A. McMahon
Robert A. McMahon (0064319)
Eberly McMahon Hochscheid LLC
3700 Eastern Avenue
Cincinnati, Ohio 45226
(513) 533-3441
bmcmahon@emh-law.com

Trial Attorney for Plaintiff Hughette Crumpler


  /s/ Michael A. Manzler
Michael A. Manzler (0059968)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 977-8693
michael.manzler@dinslaw.com

Trial Attorney for Third-Party Defendant
    John W. Paxton, Sr.

18

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Joint Motion to Strike and Memorandum in Support thereof was filed electronically with the Court this 17th day of October, 2003. Notice of this filing will be sent to Steven J. Miller, James S. Wertheim and John J. Pinney, Attorneys for Defendants/Third-Party Plaintiffs, Goodman Weiss Miller LLP, 100 Erieview Plaza, 27th Floor, Cleveland, Ohio 44114-1882, and to Robert A. McMahon, Attorney for Plaintiff, Eberly McMahon Hochscheid LLC, 3700 Eastern Avenue, Cincinnati, Ohio 45226, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


  /s/ Michael A. Manzler
Michael A. Manzler (0059968)


#949753