IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HUGHETTE CRUMPLER, | ) | CASE NO. C-1-02-131 |
| | ) | |
| Plaintiff, | ) | JUDGE SUSAN J. DLOTT |
| | ) | |
| vs. | ) | |
| | ) | |
| TELXON CORPORATION, et al., | ) | |
| | ) | |
| Defendants/Third-Party | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN W. PAXTON, SR., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

---

**TELXON CORPORATION AND SYMBOL TECHNOLOGIES, INC.'S
MEMORANDUM IN OPPOSITION TO CRUMPLER AND PAXTON'S JOINT
MOTION TO STRIKE CERTAIN SUMMARY JUDGEMENT AFFIDAVITS AND
EXHIBITS SUBMITTED BY TELXON AND SYMBOL**

---

OF COUNSEL:

GOODMAN WEISS MILLER LLP

STEVEN J. MILLER (0014293)
JAMES S. WERTHEIM (0029464)
JON J. PINNEY (0072761)
100 Erieview Plaza, 27th Floor
Cleveland, OH 44114-1882
(ph.) 216-696-3366 • (fax) 216-363-5835
miller@goodmanweissmiller.com
wertheim@goodmanweissmiller.com
pinney@goodmanweissmiller.com

**Attorneys for Defendants/Third-Party
Plaintiffs**

## INTRODUCTION

This Court has proper evidentiary materials before it in opposition to the motions for summary judgment filed by Plaintiff Hughette Crumpler ("Crumpler") and Third-Party Defendant John W. Paxton, Sr. ("Paxton"). Those materials include the various affidavits presented by Defendants/Third-Party Plaintiffs Telxon Corporation's ("Telxon") and Symbol Technologies, Inc. ("Symbol") with their opposition memorandum. The Crumpler/Paxton attacks on those affidavits do not withstand scrutiny. Time and again, the complaints about the affidavits lack merit. The affidavits were properly presented, should be admitted as received by this Court, and should be recognized (along with the other evidence and the legal arguments) as precluding the grant of summary judgment that Crumpler/Paxton seek.

## LEGAL ARGUMENT

**I.    None of Telxon and Symbol's Declarations Should Be Stricken.**

Crumpler and Paxton's Joint Motion to Strike is misleading and rife with exaggeration. Telxon and Symbol demonstrate here that the Joint Motion to Strike should be denied, as it lacks any merit.

### A.    The Norton Rose Declaration and Attached Exhibit.

Crumpler and Paxton open with the argument that Norton Rose's affidavit should be stricken because it is not dated. *See* Joint Mot. to Strike at 2-3. Crumpler and Paxton cite three cases, yet none of which stands for the proposition that an undated declaration must be stricken. *See* Joint Mot. to Strike pgs. 2-3. Rose's affidavit contains a line next to his signature for "Date: September ____, 2003." *See* Appendix, Tab 1, Rose Dec., at 4.[1] Apparently , Rose forgot to write in the exact day

---

[1]    The "Appendix" referenced is Telxon and Symbol's Appendix submitted with its Memorandum in Opposition to Crumpler and Paxton's Motions for Summary Judgment.

in September when he signed the affidavit.[2]  This is not a basis on which an affidavit should be stricken.

Second, Crumpler and Paxton assert that Rose's declaration exceeds his knowledge.  *See* Joint Mot. to Strike at 3.  Rose did not leave the Board until August 1999.  *See* Appendix, Tab 1, Rose Dec., ¶1.  Rose's declaration addresses policies and practices that were in place during his Board service, both before and after Paxton was hired months earlier, in March 1999.  *See* Appendix, Tab 1, Rose Dec., ¶5, 6, 7, 8,9.  These are relevant and important.  Paxton himself testified that he inquired about the "hiring practices of officers, hiring practices of all others" when he was appointed.  (Paxton Depo. at 20.)  There is no evidence in the record that the policies and practices of the Board changed after Rose departed.  Rose's declaration does not contain any statements regarding events occurring after August 1999.  Clearly, Rose's declaration is based on personal knowledge, relevant, and admissible.  *See* White v. Honda of America MFG., Inc., 191 F. Supp.2d 933, 943 (S.D. Ohio 2002) (denying motion to strike affidavit on basis that "Tucker's position at Honda requires him to be familiar with the 12-month policy because he is directly responsible for application of the policy.  Thus, the Court finds that Tuckers statements are admissible as to Defendant's 12-month policy.").

Crumpler and Paxton's third argument attacks paragraph 5 of Rose's declaration.  *See* Joint Mot. to Strike at 3.  Contrary to Crumpler and Paxton's baseless assertions, paragraph 5 is based on Rose's personal knowledge and is admissible under Fed. R. Evid. 701.  Rose served on Telxon's Compensation Committee that met "to evaluate and improve Telxon's organizational structure and staffing and to review remuneration arrangements with Telxon's senior management."  *See* Appendix, Tab 1, Rose Dec., ¶2,3,4.  Rose was therefore familiar with Telxon's various departments

---

[2]    Rose faxed his signed affidavit on September 3, 2003.

2

and offices. As noted by several courts, "corporate officers are presumed to have personal knowledge of the acts of their corporation." <u>Reddy v. Good Samaritan Hospital</u>, 137 F. Supp.2d 948, 956 (S.D. Ohio 2001) <u>citing</u> Moore's Fed. Practice. §56.14[1][c] (3d ed. 1999). "Personal knowledge may also flow logically from the context of the affidavit." <u>Id.</u> Paragraph five reflects Rose's view – based on intimate knowledge of Telxon acquired after sitting on Telxon's Board for nine years – that the creation of an office and the title "Vice President of Administration and Organizational Development" resulted in a significant change in the organizational structure of Telxon. *See* Appendix, Tab 1, Rose Dec., ¶5. Rose thus properly formulated the opinion that the "creation of such an office and such a change in Telxon's organizational structure would have required, during my tenure, first approval by the Board's Compensation Committee, and ultimately would have required the approval of the full Board." *See* Appendix, Tab 1, Rose Dec., ¶5. Given the foregoing, paragraph 5 of Rose's declaration is admissible under Fed. R. Evid. 701 since it is (a) rationally based on Rose's perception, (b) helpful to a clear understanding of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702. *See* Fed. R. Evid. 701 ("Opinion Testimony of Lay Witnesses").

Third, Crumpler and Paxton contend that Rose's affidavit sets forth hearsay. *See* Joint Mot. to Strike at 4. However, Rose was a member of the Board in March 1999 and thus was in a position to have first-hand knowledge of communications made to Paxton. *See* <u>Reddy</u>, 137 F. Supp.2d at 956 (holding that the word "'recollection' indicates information based on personal knowledge."), <u>citing</u> <u>Bright v. Wal-Mart Stores, Inc.</u>, 1998 U.S. Dist. LEXIS 4669 (N.D. Ill. April 6, 1998) (refusing to strike affidavit based on "recollection").

Finally, Crumpler and Paxton argue that Defendants are using conclusory testimony about amorphous "practices and policies" to contradict corporate records. *See* Joint Mot. to Strike at 4.[3] Crumpler and Paxton ignore the fact that repeating the same thing over and over again does not make it true. The cited practices and policies do not contradict Telxon records; in fact, they are supported by multiple witnesses and corporate records, including Exhibit A to Rose's declaration.[4] Crumpler and Paxton move to strike Exhibit A, but never tell this Court why or on what grounds it should be stricken; in fact, there are none. Exhibit A states that "the Committee also wants to be sure that keeping with long-standing policy there are no officer severance packages put forth without the prior approval of the Board...." This is hardly "amorphous." See <u>Barthemelemy v. Air Lines Pilots Assoc.</u>, 897 F.2d 999, 1018 (9th Cir. 1990) (affirming trial court's decision not to strike affidavits of TWA's Chairman of the Board and TWA's investment banker because "their personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore...").

Crumpler and Paxton's argument that Rose's declaration "flies in the face of Telxon's corporate by-laws" is another misstatement. As discussed at length in Telxon's summary judgment opposition memorandum, Telxon's By-Laws specifically state that the "Chief Executive Officer of the Corporation may appoint additional non-executive officers of the Corporation **whose duties do not generally include the formulation of corporation policies**." *See* Mem. in Opp. at 8 (emphasis added). Accordingly, Telxon's Board – *not Paxton* – determines which officers formulate corporate policy. This is precisely why Telxon's Board maintained a policy and practice of reviewing and

---

[3]    Crumpler and Paxton improperly cite in support of this argument Judge Dowd's vacated proposed order. *See* Joint Mot. to Strike at 4. Telxon and Symbol moved to strike all these references, and the Court should ignore them.

[4]    Exhibit A to Rose's declaration was previously produced.

approving the hiring of all officers.  Section 2 of the By-Laws states that Telxon's Board – not the CEO – chooses the executive officers.  Thus, under the By-Laws, Paxton could not simply circumvent the Board by creating a new office with a new title, which is precisely what he did here.

Paxton sought to nullify Telxon's Board of Directors by creating for Crumpler a new office with a new title.  Crumpler's office and title never existed at Telxon.  Paxton contrived it without consulting anyone, including Telxon's General Counsel Glenn Hansen or Board.  Clearly, an arbitrary title conjured out of thin air does not dictate whether someone is a Telxon "Executive Officer."  Moreover, the By-Laws clearly state that the Board has the sole authority to create the executive offices for the corporation.  Sections 1 and 2 of the By-Laws repeatedly state "*if* such office is *created by the Board*."  *See* Appendix 2, Ex. A (emphasis added).  Section 2 clearly states that the Board chooses the Executive Officers of Telxon, under titles and offices created solely by the Board – not unilaterally by Paxton.[5]

Paxton's fiduciary obligations required him to consult the Board about the creation of a new office that would oversee two separate departments at Telxon (Legal and HR).  Telxon's Board then

---

[5]     Crumpler and Paxton repeatedly argue that since Crumpler's title is not listed under Section 1 of the By-Laws, Crumpler must therefore be a "non-executive officer."  However, they misrepresent what Section 1 actually states.  Section 1 lists a sample of titles for "Executive Officers," states that <u>other</u> titles and offices "*may* include" several Senior Vice Presidents, and clearly does not preclude other executive officers under different titles.  "It is well established that 'the rules of contract interpretation are generally applicable to the interpretation of bylaws.'"  <u>IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.</u>, 26 F.3d 370, 374 (2nd Cir. 1994) (holding that "RTC's bylaws and delegation of power thereunder, *as interpreted and applied by its Board,* authorized Roelle [RTC's Director of Operations] to make the repudiation decision at issue herein."), <u>citing</u> 18 C.J.S. Corporations §116:

> *The board of directors of a corporation may interpret an ambiguous by-law without formality*, the interpretation arising from their conduct and methods of transacting business, and the general rule as to recognizing a practical construction by the parties applies, so that, in the case of ambiguity in a by-law, *a court will not give it a positive construction opposed to any consistent practical construction which it has received from the corporation and its members*, where such practical construction is not unreasonable.... (emphasis added)

Therefore, in the event the Court finds Telxon's By-Laws ambiguous or unclear on this issue, Telxon's interpretation of the By-Laws – not Paxton's – applies so long as it is reasonable (which it is).  <u>Id.</u>

would have made the decision whether that office was a "Senior Vice President" position and potentially an "Executive Officer."

**B.    The Raj Reddy Declaration.**

Crumpler and Paxton argue similarly against the Reddy declaration. *See* Joint Mot. to Strike at 5. But, Dr. Reddy's declaration also sets forth his personal knowledge based on his personal Board service at the time. *See* Appendix, Tab 2, Reddy Dec., ¶2-4.

Crumpler and Paxton next argue that "[a]dditional inadmissible hearsay is found in paragraphs 4, 11, 13-16, 18 and 19, where Reddy refers to alleged 'practices and policies' limiting Paxton's conduct." *See* Joint Mot. to Strike at 5. They apparently leave it to the Court to discern what exactly they are talking about. *See* Ulmer v. Dana Corp., 200 F. Supp.2d 804, 812 (N.D. Ohio 2002) (denying motion to strike since "Defendants simply make generalized allegations and leave the Court to divine precisely which statements in which affidavits fall within the parameters of Defendants' generalized allegations. Therefore, the Court cannot at this juncture in the proceedings, make a well-reasoned determination as to the propriety of striking any portion of the any of the affidavits.") Any objective review of the cited paragraphs confirms that only one of them (paragraph 11) concerns communications. All of the other paragraphs address the policies and practices of Telxon's Board and Committees, of which Dr. Reddy was a member and thus had admissible personal knowledge under Fed. R. Evid. 401, 402, and 406. Paragraph 11, the only testimony that references any communications, states that the Board communicated the policies and practices to Paxton. Dr. Reddy was a member of the Board at all times relevant.

Lastly, Crumpler and Paxton contend that Reddy refers to documents not previously disclosed. *See* Joint Mot. to Strike at 5. Yet, Dr. Reddy merely references briefly Telxon's proxy statements in paragraphs 2 and 3 of his declaration. A review of Crumpler's document requests

6

reveals that she never even asked for the Telxon proxy statements. *See* Ex. F hereto. Paxton's document request number 10 is the only one that even comes close. *See* Ex. G hereto, Request No. 10. But, if Paxton sought proxy statements in that request, there are several problems. First, it was poorly constructed and was reasonably interpreted to address "merger related documents." Second, Telxon and Symbol properly objected to the request and Paxton never submitted an amended request or pursued that one.[6]

Third, those documents were publicly (and equally) available to all parties via the SEC's website. Telxon's response to Request No. 10 stated "some of this information is public record and more easily accessed at http://www.sec.gov/." *See* Ex. G, Response to Request No. 10; *see* S.E.C. v. Samuel H. Sloan & Co., 369 F. Supp. 994, 995-996 (S.D.N.Y. 1973) (refusing to order discovery of transcript of public hearing, which was equally available to all parties on payment of costs); Bleecker v. Standard Fire Ins. Co., 130 F. Supp. 2d 726, 739 (E.D.N.C. 2000) (defendant insurance company was not required to produce manuals issued by National Flood Insurance Program, which were public records and readily accessible to plaintiff); Krieger v. Fadely, 199 F.R.D. 10, 14 (D.D.C. 2001) (magistrate judge found defendant's response that materials sought are "in the public domain" to be insufficient, and ordered defendant to supplement its responses by identifying where in public domain responsive materials appear, which is exactly what Telxon did here).

---

[6]     Telxon rightfully objected to request number 10 as "overly broad" and "unduly burdensome" considering that Paxton's request encompassed tens of thousands of pages of irrelevant material and lacked the requisite specificity under Fed. R. Civ. P. 34, which states "the request shall set forth, either by the individual item or by category, the items to be inspected, and describe each with reasonable particularity." Telxon would have literally produced tens of thousands of pages of financial statements, none of which have anything to do with this case. Paxton never supplemented his request or moved to compel.

Paxton, a signatory to the proxy statements, cannot possibly claim in good faith that he did not have full and easy access to Telxon's proxy statements. Accordingly, Dr. Reddy's passing reference to Telxon's proxy statements does not warrant striking any portion of his declaration.

### C.    The Meg Pais Declaration and Attached Exhibits.

Crumpler and Paxton stretch the facts farthest in their attack on the Pais Declaration, which they inaccurately say contradicts her deposition testimony. *See* Joint Mot. to Strike at 6. That is wrong; there is no contradiction.

Paragraph 2 of Pais's declaration states:

> During my tenure at Telxon, the company's policy and practice required approval by the Compensation Committee of the Board of Directors of all officer hires and remuneration arrangements with officers of the company, including, but not limited to, salary, bonus criteria, stock option grants, and severance agreements, including any change-in-control agreements.

Crumpler and Paxton want this Court to ignore Pais's consistent deposition testimony:

Q:    To your knowledge, did Mr. Paxton violate any type of process when he hired Hughette Cumpler?

A:    What I have knowledge of is when past executives were hired, when the paperwork was put together it went to the board, the compensation went to the board. I have no knowledge that Mr. Paxton took Hughette Crumpler's paper to the board. But I have knowledge of how things had been done prior to her hiring.

(Pais Depo. at 61.)

\*\*\*

Q.    You say it was a practice prior to Mr. Paxton -- I assume you're talking under Mr. Brick's chairmanship?

A.    No, it was also when Mr. Paxton was chairman and CEO.

Q.    That he did what?

A.    That he took employment agreements with change in control, stock options, the whole gamut, to the board, the compensation committee of the board.

(Pais Depo. at 64.)

***

Q.    And other than what Glen Hanson or Frank Brick told you, do you have any other sources of information that would suggest that it was Telxon's practice to take any employment documents, change in control agreements or the like to either the compensation committee or the full Board of Directors for approval?

MR. WERTHEIM:    Objection.    I think she already testified to that information, but go ahead.

A.    Other than what I was asked to prepare for the compensation committee of the board, which was full change in control, full offer letter, employment agreement, I would prepare the materials and pass them upward for review.

***

Q.    And what information did you ever prepare for the compensation committee?

A.    A combination of stock option grants, and I also was -- I didn't create the change in control documents, but I assisted in administering and insuring that people were given the correct documents.    I prepared all that for board review.

(Pais Depo. at 70-71.)

Thus, Pais testified – in plain terms – that Compensation Committee approval was required. Her declaration does not conflict with her deposition testimony.    Rather, it reaffirms and supplements her testimony.  "[A] court can consider an affidavit that merely supplements testimony given in a deposition."  Soletro v. National Federation of Independent Business, 130 F.Supp.2d 906, 910 (N.D. OH 2001), citing S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996) (when an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when ruling on a summary judgment motion.); Stubl v. T.A. Systems,

9

Inc., 984 F. Supp. 1075, 1091 n.19 (E.D. Mich. 1997). Crumpler and Paxton's argument cannot survive objective scrutiny.

Crumpler and Paxton again contend that declaration exhibits were not produced in discovery. *See* Joint Mot. to Strike at 8. But, Exhibits B is a "standard Telxon employment agreement" and Exhibit C is a "standard Telxon offer letter," and neither Crumpler nor Paxton requested them in discovery. *See* Exs. F, G hereto. (They do not even identify requests to which those documents are purportedly responsive.) Exhibit F to Ms. Pais's declaration is a "Revised Offer Letter" between Telxon and Gene Harmegnies. In response to Crumpler's Request No. 15, Telxon and Symbol produced the entire Harmegnies personnel file. *See* Ex. F, Request No. 15. Moreover, Exhibit F is publicly available on the SEC's website.[7] Considering that Exhibit F is only referenced once in a single footnote of Telxon's summary judgment opposition (*see* Telxon's Mem. in Opp. at 18, fn.18), Crumpler and Paxton were not prejudiced by it. Moreover, they had full opportunity to address Exhibit F in their reply, but failed to do so.

Crumpler and Paxton also move to strike Exhibit E. *See* Joint Mot. to Strike at 8. Ms. Pais verified that Exhibit E comprises her handwritten notes on Telxon business records. *See* Appendix, Tab 3, Pais. Dec. ¶13. Those notes are fully admissible under Fed. R. Evid. 803(1), (3), and/or (6). Furthermore, Ms. Pais's declaration confirms that she was responsible for providing the members of the Compensation Committee with information and materials about proposed remuneration agreements with company officers. *See* Pais Dec. ¶3; *see also* White, 191 F. Supp.2d at 943 (denying motion to strike affidavit on basis that employee had personal knowledge because employee was responsible for application of the policy). Ms. Pais thus had personal knowledge by virtue of

---

[7]    The copy attached to the declaration was printed directly off EDGAR.

her position and duties with Telxon, and Exhibit E is admissible under Fed. R. Evid. 602, among others.

### D.    The Gary Grand Declaration

Crumpler and Paxton move to strike unspecified paragraphs of Mr. Grand's declaration on the basis that Telxon and Symbol never produced accounting records for 1998, 1999, and 2000. *See* Joint Mot. to Strike at 9.[8] This is false, and once again Crumpler and Paxton directly mislead this Court. Crumpler and Paxton never requested Telxon's accounting records for fiscal year 1998 and now pretend that they did. *See* Exs. F, G hereto.[9] Telxon produced its accounting records for 1999 and 2000. *See* Ex. KK. In fact, Telxon and Symbol specifically cited Exhibit KK in their summary judgment opposition when discussing Mr. Grand's declaration and refuting Paxton's false testimony. *See* Mem. in Opp. at 3-4; Appendix, Ex. KK.

### E.    The Edward Chung Declaration and Attached Exhibits.

Crumpler and Paxton move to strike Mr. Chung's declaration on the basis that Telxon and Symbol did not disclose Mr. Chung in their initial disclosures or discovery responses. *See* Joint Mot. to Strike pg. 9.[10] Mr. Chung has no substantive knowledge, which is why he was not disclosed. Mr. Chung's declaration serves the exclusive purpose of authenticating three documents. His declaration presents no substantive testimony. *See* Appendix, Tab 5, Chung Dec.

---

[8]    The only paragraph from Mr. Grand's declaration that Crumpler and Paxton specifically reference is paragraph 2, which they contend is inadmissible hearsay. But, paragraph 2 merely confirms Ms. Pais's own testimony on the same point, and is not offered for the truth of the matter asserted but instead for corroboration.

[9]    Mr. Grand was identified on Telxon and Symbol's initial disclosures. Crumpler and Paxton never deposed him.

[10]    Astoundingly, Paxton ***never even produced initial disclosures*** in this case. As a matter of principle and fairness, this Court should strike Crumpler and Paxton's Joint Motion, at least to the extent it relies on an argument of non-disclosure.

Crumpler and Paxton claim that Telxon and Symbol deprived them "of the opportunity to depose him." *See* Joint Mot. to Strike at 10. This argument is disingenuous considering that Crumpler and Paxton only deposed 5 of the 20 people listed on Telxon and Symbol's initial disclosures, two of whom were Symbol's counsel who also worked on the merger. Moreover, Mr. Chung – as Symbol's outside counsel – would generally be precluded from responding because of the attorney-client privilege.

Moreover, Paxton and Crumpler both worked with Simpson Thatcher & Bartlett LLP during the merger. And in response to deposition questions by Crumpler's counsel, Robert Bradshaw specifically identified Simpson Thatcher as Symbol's counsel. (*See* Bradshaw Depo. pg. 52.) Therefore, Crumpler and Paxton well knew that Simpson Thatcher and various of its lawyers served as Symbol's counsel. Fed. R. Civ. P. 26(e)(1) and (2) states that a party is under a duty seasonably to amend its initial or discovery disclosures only "if the additional or corrective information *has **not** otherwise been made known to the other parties during the discovery process*...." (emphasis added).

Crumpler and Paxton next claim that Telxon did not produce the documents authenticated by Mr. Chung. *See* Joint Mot. to Strike at 10. This too is misleading and inaccurate. The Merger Agreement was attached to several pleadings in this case, was produced in discovery by Telxon and Symbol, and was marked as an exhibit during depositions. *See* Ex. 34. It too is publicly available on the SEC's website, as Paxton and Crumpler well know (Paxton is a signatory to the document and Crumpler worked on it). *See* Ex. 34 (which is an EDGAR version of the document, printed directly off the SEC's website). All requested (and relevant) disclosure schedules were also produced in response to Crumpler's request for "All documents referring or relating to Section 2.10(a) of the Company Disclosure Schedule...." *See* Ex. F attached hereto, Request No. 21. The other disclosure schedules are not relevant, and Crumpler and Paxton never made a subsequent request for them.

12

Crumpler also never asked for the Form S-4, which appears as Exhibit B to Mr. Chung's Declaration; and again it is publicly available on the SEC's website. See Ex. F hereto. Mr. Chung's declaration is proper and admissible, as are the attached exhibits.[11]

### F.    The Cecile Hickman Declaration.

Crumpler and Paxton's arguments with respect to Ms. Hickman's declaration make little sense and are desperately vague. *See* Joint Mot. to Strike at 11. They generally assert that the declaration contains "conclusory statements that contradict corporate records, lacks foundation, and otherwise constitute inadmissible hearsay," none of which is true. *See* Joint Mot. to Strike pg. 6. Again, they apparently defer to this Court to "divine" what they are talking about. *See* Ulmer, *supra*, 200 F. Supp.2d at 812 (denying motion to strike due to "generalized allegations" and Court's inability to "divine" what is specifically being alleged).

Paxton and Crumpler ask this Court to strike the entire declaration, but specifically reference only one paragraph, number 12. Yet, paragraph 12 clearly states that the declaration is based on "personal knowledge" and outlines specifically how and why Ms. Hickman concluded that Paxton (and therefore Crumpler) had improperly backdated change in control agreements to pre-date the Merger Agreement.[12] Paragraph 12 is half a page long and is not "absurdly vague" as Crumpler and Paxton claim. Ms. Hickman's declaration is proper and admissible.[13]

---

[11]    Crumpler and Paxton once again argue that Mr. Chung's declaration should be stricken because it is not specifically dated. This argument holds no water.

[12]    Ms. Hickman was disclosed on Telxon and Symbol's initial disclosures. Crumpler and Paxton never deposed her.

[13]    Crumpler and Paxton also cite Ridgway v. Ford Dealer Computer Services, Inc., 114 F.3d 94, 98 (6th Cir. 1997). *See* Joint Mot. to Strike pg. 11. But, the Ridgway case does not support their argument. In fact, Ridgway references Fed. R. Evid. 1002, which states that to prove the content of a writing, the writing itself is required. Telxon and Symbol are not trying to prove a writing and Ms. Hickman's declaration is not "unsupported and conflicting." Ms. Hickman merely states that Telxon did not as a matter of policy and practice pay employees $135,000 for relocation expenses, especially when they did not ever relocate. *See* Appendix, Tab 6, Hickman Dec. ¶8,9,11. Crumpler and Paxton cannot credibly contend that Telxon's Relocation Policy actually states otherwise. Moreover, Crumpler and Paxton cannot use Fed. R.

### G.     The Glenn Hansen Declaration.

Crumpler and Paxton vaguely state that "[t]he Court should strike and disregard Hansen's affidavit for many of the same reasons previously discussed."  *See* Joint Mot. to Strike at 11.  They offer no specifics.  *See* Ulmer, *supra,* 200 F. Supp.2d at 812.  As already outlined, Mr. Hansen's declaration is fully admissible.[14]  Moreover, Crumpler and Paxton ignore the fact that Exhibit A to the Hansen declaration is the same document as Exhibit F to Ms. Pais's declaration.

### H.     The Walter Siegel Declaration and Attached Exhibit.

Mr. Siegel's declaration merely authenticates portions of redacted minutes from a December 6, 2000, Telxon Board meeting called to discuss Paxton's fraud.  Telxon and Symbol's initial disclosures identified two people who attended that meeting:  Mr. Bradshaw was deposed; Mr. Goldner, who took the minutes and signed them, was not deposed.  Mr. Siegel's declaration simply authenticates the minutes, nothing more.

Exhibit A of Mr. Siegel's Declaration was not produced because Crumpler's document request did not call for it (*see* Ex. F hereto, Requests Nos. 11, 25), and because Paxton's document 10 was reasonably interpreted to seek "merger related documents."  *See* Ex. G hereto, Request No. 10.  Due to the poor construction and overwhelming scope of Paxton's Requests, Telxon and Symbol properly objected; Paxton never submitted any amended requests or otherwise pursued this matter.

---

Evid. 1002 to limit Telxon's means of establishing their fraud.  *See* Dalton v. FDIC Corp., 987 F.2d 1216, 1223 (5th Cir. 1993) (holding that "Dalton cannot, however, use the best evidence rule to force FDIC to produce the particular type of evidence of the loan that he would prefer.")

[14]     Mr. Hansen was disclosed on Telxon and Symbol's initial disclosures.  Crumpler and Paxton never deposed him.

### I.     The Ketki Patel Declaration.

Ms. Patel, an Assistant Manager for the Holiday Inn Express, merely authenticates Crumpler's hotel records that were produced to both Crumpler and Paxton months in advance of summary judgment briefing. Her declaration contains no substantive testimony. *See* Appendix, Tab 9, Patel Dec. Ms. Patel has no knowledge regarding this case and therefore Telxon and Symbol had no obligation to identify her in initial disclosures or in response to any discovery requests.

The Holiday Inn Express bills are clearly admissible under, among others, Fed. R. Evid. 803(6). Crumpler's own testimony lead Telxon and Symbol to them, so Telxon and Symbol had no duty to supplement. (*See* Crumpler Depo. pg. 5); *see,* Fed. R. Civ. P. 26(e)(1) and (2). Ms. Patel's declaration and attached business records are proper and admissible.

### J.     The Bridgette Huerkamp Declaration.

Bridgette Huerkamp *was identified* as a witness *by Paxton* during his deposition. (*See* Paxton Depo. pgs. 138, 174, 176-177.) Telxon and Symbol simply contacted Ms. Huerkamp after Paxton brought her to their attention. Obviously, Crumpler and Paxton were on notice of Ms. Huerkamp's knowledge; their argument that Telxon and Symbol somehow precluded them from deposing her is absurd.

Ironically, Ms. Huerkamp was not identified in Crumpler's own initial disclosures or discovery responses. *See* Ex. H hereto. And, as noted, Paxton neglected to produce initial disclosures and identify Ms. Huerkamp, so her knowledge was concealed from Telxon and Symbol until Paxton was deposed.

Crumpler and Paxton's argument that Ms. Huerkamp's declaration is "largely based on speculation" also lacks merit. As the declaration plainly indicates on its face, Ms. Huerkamp's testimony is based on personal knowledge and entirely proper.

15

### K.    The Daryl Kochy Declaration.

Daryl Kochy was identified as a witness by Crumpler during her deposition testimony.  (*See* Crumpler Depo. pgs. 144-45.)    Telxon and Symbol simply followed up on the testimony and contacted Mr. Kochy after Crumpler brought him to their attention.  Therefore, Telxon and Symbol had no duty to supplement their initial disclosures and discovery responses pursuant to Fed. R. Civ. P. 26(e)(1) and (2).

Obviously, Crumpler and Paxton were on notice of Mr. Kochy's knowledge.  Their argument that Telxon and Symbol somehow deprived them from deposing Mr. Kochy is meritless.  Crumpler disclosed Mr. Kochy to Telxon and Symbol, albeit belatedly.   (Mr. Kochy was not identified on Crumpler's initial disclosures or discovery responses.)[15]  *See* Ex. H hereto.  Even a cursory review of Mr. Kochy's affidavit confirms that it is proper and admissible.  *See* Appendix, Tab 11, Kochy Dec.[16]

### L.    The Robert Goodman Declaration and Attached Exhibits.

Crumpler and Paxton's Joint Motion to Strike fails to mention that Mr. Goodman's declaration authenticates Telxon Board minutes produced to both of them.  *See* Joint Mot. to Strike pg. 15-16; Appendix, Tab 13, Goodman Dec.  Mr. Goodman, who served as Telxon's Secretary, does not present any substantive testimony.[17]  This clearly falls within the purview of DR 5-101(B)(1) and

---

[15]    The only declaration that Crumpler and Paxton have not moved to strike is Lisa McManis's declaration.  *See* Appendix, Tab 12.  Mrs. McManis directly refutes statements Crumpler attributed to her throughout this litigation, particularly in Crumpler's Memorandum in Support of her Motion for Summary Judgment.  *See* Appendix, Tab 12, McManis Dec. ¶7,8.

[16]    Crumpler and Paxton also argue that Mr. Kochy's declaration is "obviously" hearsay because "the Telxon Relocation Policy is already in the record,"  citing again "Ridgway, supra, 114 F.3d at 98" in support of this argument.  *See* Joint Mot. to Strike pg. 14.  The Ridgway case does not stand for this proposition and does not even mention the word "hearsay."

[17]    Mr. Goodman was deposed by Crumpler and Paxton, but neither has cited his testimony, and neither has filed his transcript with the Court.

(2), which provides that Mr. Goodman's testimony is appropriate if it relates to an "uncontested matter" or a "matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to that testimony." Crumpler and Paxton have not – and cannot – contest the authenticity of the Board minutes produced to them months ago.

Crumpler and Paxton once again fail to indicate what document request the Exhibit B minutes fall under. *See* Joint Mot. to Strike pg. 16. Those January 30, 1998 Board minutes were not requested. *See* Exs. F & G hereto. Once again, their argument lacks merit.

## II.    Telxon and Symbol Did Not Act In Bad Faith.

As the foregoing demonstrates, Telxon and Symbol did not act in bad faith. Crumpler and Paxton's assertion that 12 of the 13 declarations "are blatantly improper" is an extreme misrepresentation. Telxon and Symbol produced 13 declarations, mostly from witnesses who have no current connection to Telxon and Symbol. These witnesses include, for example, a Presidential Advisor and Dean of Carnegie Mellon University's School of Computer Science (Dr. Reddy), a universally respected and now retired businessman who has also sat on the Board of one of Ohio's top companies (Progressive Insurance Corp.) (Mr. Rose), two partners from highly respected law firms (Mr. Chung and Mr. Hansen), and three former high-level employees of Telxon who also no longer have any connection with Telxon or Symbol (Ms. Pais, Mrs. McManis, and Mr. Grand). Telxon and Symbol have exposed the countless overstatements, exaggerations, and distortions by Crumpler and Paxton. It is clear that Telxon and Symbol did not act in bad faith, and that the 12 declarations are proper and admissible.

## CONCLUSION

Contrary to Crumpler and Paxton's insinuations, there is no conspiracy against them. Nor have Telxon and Symbol somehow located and convinced 12 witnesses – ten of whom do not work

for Telxon or Symbol or have any connection with them – to participate by submitting false declarations against them, under the penalty of perjury. The declarations are sound, and have real and compelling evidentiary value.

In fact, these declarations help to establish the essential points that destroy any notion that this case is ripe for summary judgement. Remarkably, the following key facts and arguments – along with several others – raised in Telxon and Symbol's summary judgment opposition memorandum are simply not refuted by Paxton and Crumpler in their reply memoranda:

- Crumpler testified that, during her early negotiations with Paxton, she originally requested a $200,000 base salary and 100,000 stock options. Paxton told her that he "was embarrassed" because he could not her pay that amount and made the comment that "he was working with the board, that he inherited...." Crumpler testified that, based on Paxton's comments, she understood that Telxon's Board or Compensation Committee was limiting Paxton's authority. *See* Mem. in Opp. at 6-7; Crumpler Depo. pgs. 68-71. Paxton's statements to Crumpler amount to an admission by Paxton that Board approval was required to hire Crumpler.

- Paxton admitted he was told that he needed Board approval before hiring officers, but never bothered to ask what officers. *See* Mem. in Opp. pg. 6.

- Crumpler never relocated, never changed her mailing address, never used Telxon's relocation agent, and was reimbursed for all her travel expenses while she traveled the world for 50 of the 100 days she worked for Telxon, yet was paid $135,000 for relocation expenses. *See* Mem. in Opp. at 21-24, 48-49; Crumpler Depo. pg. 120; Appendix, Tab 11, Kochy Dec. ¶6.

- Crumpler claims to have thrown out every bill, receipt, credit card statement, record, boarding pass, or any document to that would establish that Crumpler actually incurred any expenses that Telxon previously did not reimburse her for when she was traveling the world at Telxon's expense. *See* Mem. in Opp. pg. 48.

- Crumpler signed an offer letter on June 8, 2000 that did not contain any provisions for a change in control agreement or relocation expenses. *See* Mem. in Opp. pg. 10.

- The disclosure schedules attached to the Merger Agreement only identify Crumpler has having a 1-year change in control. *See* Mem. in Opp. pg. 15.

18

- Crumpler admitted that the Amendment to her 1-year change in control agreement was not signed on "6/29/00" but claimed that she could not recall when it was actually signed. (Crumpler Depo. pgs. 132-133.)

- The wording of the "Amendment" to Crumpler's 1-year change in control agreement – on its face – confirms that *the Amendment was backdated* to predate the Merger Agreement. *See* Mem. in Opp. at 15-16.

- Crumpler's $50,000 bonus, $33,000 contract cancellation fee, and $135,000 relocation agreement were not approved by Telxon's Board or disclosed to Symbol, and were all paid months after the merger agreement was signed. *See* Mem. in Opp. 20-23.

- Crumpler's Employment Agreement expressly limited Crumpler's bonus to $37,500 for a full year, yet Paxton awarded Crumpler a $50,000 bonus without Board approval. *See* Mem. in Opp. pg. 20. Crumpler's Employment Agreement also expressly stated that Telxon's Board had to approve bonuses. *See* Mem. in Opp. pg. 21.

- The $200,000 Relocation Agreement that Crumpler submitted for payment included fraudulently overstated figures. For instance, the relocation estimate attached to the $200,000 Relocation Agreement contained $17,600 for "Temporary Housing." Paxton and Crumpler do not refute that Crumpler *incurred less than $2,000 in housing expenses* with the Holiday Inn as of the date that she submitted the $200,000 Relocation Agreement for payment. *See* Mem. in Opp. at 19.

By failing in their reply memoranda to address substantively so many of Telxon and Symbol's arguments, Paxton and Crumpler essentially concede that unless their Joint Motion to Strike is granted in its entirety and the 12 declarations are discarded, their summary judgment motions must be denied. And, as demonstrated, Paxton and Crumpler's Joint Motion to Strike lacks any merit.

For these compelling reasons, Telxon and Symbol respectfully request that this Court deny Paxton and Crumpler's Motion to Strike.

                                        Respectfully submitted,


                                         /s/ Steven J. Miller_____
OF COUNSEL:                             STEVEN J. MILLER (0014293)
                                        JAMES S. WERTHEIM (0029464)
GOODMAN WEISS MILLER LLP                JON J. PINNEY (0072761)
                                        100 Erieview Plaza, 27th Floor
                                        Cleveland, OH 44114-1882
                                        (ph.) 216-696-3366 • (fax) 216-363-5835
                                        miller@goodmanweissmiller.com
                                        wertheim@goodmanweissmiller.com
                                        pinney@goodmanweissmiller.com

                                        Attorneys for Defendants/Third-Party Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2003, a copy of Telxon Corporation and Symbol Technologies, Inc.'s Memorandum in Opposition to Crumpler and Paxton's Joint Motion to Strike Certain Summary Judgement Affidavits and Exhibits Submitted by Telxon and Symbol was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Steven J. Miller
STEVEN J. MILLER (0014293)