IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HUGHETTE CRUMPLER, | ) | CASE NO. C-1-02-131 |
| | ) | |
| Plaintiff, | ) | JUDGE SUSAN J. DLOTT |
| | ) | |
| vs. | ) | |
| | ) | |
| TELXON CORPORATION, et al., | ) | DEFENDANTS' RESPONSES TO |
| | ) | PLAINTIFF'S FIRST SET OF |
| Defendants/Third-Party Plaintiffs, | ) | INTERROGATORIES. |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN W. PAXTON, SR., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Defendants, Telxon Corporation and Symbol Technologies, Inc. (collectively, "Defendants"), for their Responses to Plaintiff, Hughette Crumpler's ("Crumpler"), First Set of Interrogatories, object and respond as follows:

## GENERAL OBJECTIONS

1.   Defendants will give undefined words contained in the Interrogatories their commonly-accepted meanings and respond to the Interrogatories on that basis pursuant to the Federal Rules of Civil Procedure.

2.   Defendants object to the Interrogatories to the extent that they fail to comply with, or seek to alter, the rights and obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, or any Orders of this Court. Defendants state that it

**Exhibit C**

will respond and/or specifically object to the Interrogatories pursuant to the Federal Rules of Civil Procedure and not pursuant to Crumpler's characterization of those rules.

3. Defendants object to the Interrogatories to the extent that they seek information protected by the attorney-client privilege or the attorney work product doctrine, or any other applicable privilege. Defendants will not respond to such Interrogatories or those portions of the Interrogatories that seek such information. Inadvertent disclosure of any such information shall not constitute a waiver of any privilege or work product claim, nor shall such inadvertent disclosure waive Defendants' right to object to the use of any information contained therein during this action or in any other proceeding.

4. Defendants object to the definition of Telxon and Symbol to include any entities or persons other than Telxon Corporation and Symbol Technologies, Inc. and their officers and employees.

The following responses are subject to the General Objections stated. Specific objections supplement the General Objections already stated:

**INTERROGATORY NO. 1.** Identify each person assisting in the preparation of your answers to these Interrogatories and verifying the same on your behalf.

**RESPONSE:**

Robert Bradshaw. Answering further, see Telxon's verification page which is attached hereto.

**INTERROGATORY NO. 2.** State on what date(s) you contend that Telxon and Crumpler signed the following documents:

a) Employment Agreement;
b) Change in Control Agreement; and
c) Amendment to the Change in Control Agreement.

**RESPONSE:**

Objection: Defendants object to the extent that Interrogatory No. 2 implies that the agreements were "signed" by an authorized agent of Telxon and therefore by Telxon. Crumpler, as a party to the agreements, is the primary source of the information requested but has refused to provide full and complete answers in response to Telxon's previously propounded interrogatories. Subject to the foregoing specific objection and the general objections stated above, Defendants state for their answer that Defendants do not know if or when the listed documents were signed.

**INTERROGATORY NO. 3.** Identify all persons who were present when Crumpler signed each of the above documents.

**RESPONSE:**

See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 4.** Describe in detail how these documents were presented to Crumpler for signature (i.e., mailed, faxed, handed to you), including but not limited to, who presented these documents to her and where she was when they were presented to her.

**RESPONSE:**

See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 5.** State where each of the above documents were signed.

3

**RESPONSE:**

See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 6.** How many originals of each of the above documents were signed and where are they maintained.

**RESPONSE:**

See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 7.** Do you contend that Paxton was not authorized to hire Crumpler? If so, what facts and circumstances support that contention?

**RESPONSE:**

Objection: Interrogatory No. 7 is vague and ambiguous. Crumpler was purportedly hired as a consultant by Paxton and also allegedly hired as an employee. Interrogatory No. 7 does not specify whether it seeks information about Paxton's authority to hire Crumpler as a consultant or employee. Furthermore, Interrogatory No. 7 is not specific as to date. Subject to and without waiving the foregoing objections, Defendants state that at various points in time, both before and after the signing of the merger agreement between Telxon and Symbol, hiring restrictions were imposed on Telxon and, thus, Paxton, by the terms of the merger agreement, which will be produced in response to Crumpler's Request for Documents. Since Paxton purportedly hired Crumpler during one of these restrictive periods, he did not have any authority to do so. Further, Paxton may have been required to obtain board approval to hire Crumpler regardless of the status of the merger agreement or the time at which she was purportedly hired.

4

**INTERROGATORY NO. 8.** What facts and circumstances support your claim that Paxton did not have the authority to enter into the following agreements with Crumpler on behalf of Telxon:

    a)    Employment Agreement;
    b)    Change in Control Agreement;
    c)    Amendment to the Change in Control Agreement; and
    d)    Relocation Agreement.

**RESPONSE:**

a) See Answer to Interrogatory No. 7; b) Telxon's Board of Directors maintained a policy that Change in Control agreements had to be approved by the Board. Further, Paxton was precluded, without the express written consent of Symbol, from entering into Change in Control agreements by the terms of the merger agreement between Telxon and Symbol; c) See above answer; d) Paxton was precluded by the terms of the merger agreement from entering into the alleged relocation "agreement" without the express written consent of Symbol, which Paxton failed to obtain. Moreover, the relocation "agreement" allegedly entered into between Paxton and Crumpler dramatically deviated from the terms of Telxon's existing relocation policy. Further answering, Crumpler did not relocate and was therefore not entitled to any relocation payment.

**INTERROGATORY NO. 9.** Do you claim that Paxton did not hire Crumpler on behalf of Telxon to ultimately replace Margaret E. Pais? If so, what facts and circumstances support your contention?

**RESPONSE:**

Defendants do not know why Paxton acted as he did with respect to Crumpler.

**INTERROGATORY NO. 10.** Did Margaret E. Pais have a change in control agreement in effect as of June 2000 that provided her benefits equal to two times her annual salary?

**RESPONSE:**

Yes.

**INTERROGATORY NO. 11.** Identify every person involved in the drafting of the following documents:

a) Employment Agreement;
b) Offer letter;
c) Change in Control Agreement; and
d) Amendment to the Change in Control Agreement.

**RESPONSE:**

Objection: This Interrogatory is vague, ambiguous and unintelligible as written. Defendants will assume the Interrogatory relates to the documents involving Crumpler that are at issue in this case. Subject to and without waiving the above objections, see Answer to Interrogatory No. 2.

**INTERROGATORY NO. 12.** Did Margaret E. Pais have a change in control agreement in effect as of June 2000 that provided her benefits equal to two times her annual salary?

**RESPONSE:**

Yes.

**INTERROGATORY NO. 13.** Did Telxon and/or Symbol ever pay any change in control benefits to Margaret E. Pais? If so, how much and when.

**RESPONSE:**

No.

**INTERROGATORY NO. 14.** Identify all change in control agreements signed by Paxton during his tenure as chairman and CEO of Telxon, and with respect to each such agreement, provide the following information:

    a)    Was Telxon's board of directors required to approve, authorize or ratify each such agreement?
    b)    If so, on what date did Telxon's board of directors approve, authorize or ratify each such agreement?
    c)    How did Telxon's board of directors approve, authorize or ratify each such agreement?
    d)    Identify all documents referring or relating to any action taken by Telxon's board of directors to approve, authorize or ratify each such agreement?

**RESPONSE:**

Objection: Interrogatory No. 14 is unduly burdensome and is not reasonably calculated to lead to discovery of admissible information. Paxton was Telxon's Chairman and Chief Executive Officer for almost two years. Interrogatory No. 14 is not limited in time or scope and seeks extensive irrelevant, confidential information.

**INTERROGATORY NO. 15.** Identify all severance agreements signed by Paxton during his tenure as chairman and CEO of Telxon, and with respect to each such agreement, provide the following information:

    a)    Was Telxon's board of directors required to approve, authorize or ratify each such agreement?
    b)    If so, on what date did Telxon's board of directors approve, authorize or ratify each such agreement?
    c)    How did Telxon's board of directors approve, authorize or ratify each such agreement?

    d)    Identify all documents referring or relating to any action taken by Telxon's board of directors to approve, authorize or ratify each such agreement?

**RESPONSE:**

Objection: Interrogatory No. 15 is vague and ambiguous. The term "severance agreements" is undefined and ambiguous in nature. Telxon did not have an agreement titled "severance agreement" or any similar document. Further answering, See Answer to Interrogatory No. 14.

**INTERROGATORY NO. 16.** Do you contend that a change in control agreement is the same as a severance agreement? If so, what facts and circumstances support your contention?

**RESPONSE:**

Objection: Interrogatory No. 16 contains undefined terms and phrases that are ambiguous in nature. Subject to and without waiving the foregoing objections, a change in control agreement, effective upon a merger, is typically considered to be a type of severance payment in the ordinary sense. Telxon's Board of Directors considered a change of control payment to be a form of severance. Every former Telxon employee that received a payment pursuant to a change in control agreement no longer works for Telxon.

**INTERROGATORY NO. 17.** On what date did Crumpler begin her employment with Telxon?

**RESPONSE:**

Objection: Defendants object to the extent that Interrogatory No. 17 implies that Crumpler was ever employed by Telxon. Subject to and without waiving the foregoing objections, Defendants state that they do not know this information.

8

**INTERROGATORY NO. 18.** Identify all persons that had any knowledge about Telxon's hiring of Crumpler.

**RESPONSE:**

Objection: Defendants object to the extent that Interrogatory No. 18 implies that Crumpler was ever hired by Telxon. Furthermore, Telxon purportedly retained Crumpler as a consultant and also allegedly as an employee. Interrogatory No. 18 is vague and ambiguous in this regard. Subject to and without waiving the foregoing objections, Defendants, for their answer, state: John W. Paxton, Sr., Hughette Crumpler, Lisa McManis, and Beth Staples.

**INTERROGATORY NO. 19.** Identify all persons that had any knowledge about Crumpler's Change in Control Agreement.

**RESPONSE:**

Objection: Defendants object to the extent that Interrogatory No. 19 implies that Crumpler's Change in Control agreement is a valid and binding agreement on Telxon. Subject to and without waiving the foregoing objections, Defendants, for their answer, state: John W. Paxton, Sr. and Hughette Crumpler.

**INTERROGATORY NO. 20.** Identify all persons that had any knowledge about Crumpler's Amendment to the Change in Control Agreement.

**RESPONSE:**

Objection: Defendants object to the extent that Interrogatory No. 20 implies that Crumpler's Amendment to the Change in Control agreement is a valid and binding agreement

on Telxon. Subject to and without waiving the foregoing objections, Defendants, for their answer, state: John W. Paxton, Sr. and Hughette Crumpler.

**INTERROGATORY NO. 21.** Has Telxon ever had a relocation policy, program or procedure pursuant to which Telxon agreed to or did pay any employee or officer certain relocation expenses based on a percentage of that employee or officer's annual salary? If so, provide the following information:

    a)     What were the terms and conditions of the policy, program or procedure?
    b)     Identify all documents referring or relating to that policy, program or procedure.

**RESPONSE:**

Objection: Interrogatory No. 21 is vague and ambiguous as to what is meant by "certain relocation expenses." Subject to and without waiving the foregoing objections, no.

**INTERROGATORY NO. 22.** What facts and circumstances support your claim that Crumpler and Paxton committed fraud?

**RESPONSE:**

Objection, Interrogatory No. 22 is vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that the facts and circumstances are fully set forth in Defendants' Counterclaim and Third-Party Complaint filed in this case.

**INTERROGATORY NO. 23.** With respect to the Relocation Agreement, provide the following information:

    a)     Identify all employees, officers, agents, representatives and attorneys of Symbol that had knowledge of the Relocation Agreement before November 30, 2000.

b) Identify the date(s) when each such person obtained that knowledge.
c) Did any employee, officer, agent, representative or attorney of Symbol take any action (either verbally or in writing) to object to or contest the Relocation Agreement before November 30, 2000?
d) Identify all facts and circumstances supporting your claim that Crumpler and Paxton defrauded Telxon and/or Symbol in connection with the Relocation Agreement.

**RESPONSE:**

a) After reasonable inquiry, Defendants are unable to identify any person that had knowledge of Crumpler's alleged Relocation Agreement before November 30, 2000; b) See above; c) See above; d) See Answer to Interrogatory No. 8(d) above.

**INTERROGATORY NO. 24.** If you denied any of Crumpler's First Requests for Admission, whether in whole or in part, what facts and circumstances support each such denial?

**RESPONSE:**

Objection: Interrogatory No. 24 amounts to a twenty-seven part question and, therefore, Crumpler's First Set of Interrogatories, by way of Interrogatory No. 24, exceeds the 40 interrogatory limit (including subparts) established by the Joint Discovery Plan. Further answering, the reasons for certain denials are already fully set forth in Defendants' Responses to Crumpler's First Request for Admissions or are clearly self-explanatory. Subject to the foregoing objections, Defendants answer as follows: Requests for Admissions Nos. 5-11, 13-23, 33: See Answer to Interrogatory No. 8. Request for Admission No. 11: Telxon did not have a Vice President Administration/Organizational Development.

Respectfully submitted,

OF COUNSEL:

GOODMAN WEISS MILLER LLP

_(signature)_

JAMES S. WERTHEIM (0029464)
KIMBERLY Y. SMITH (0066849)
JON J. PINNEY (0072761)
100 Erieview Plaza, 27th Floor
Cleveland, OH 44114-1882
(ph.) 216-696-3366 • (fax) 216-363-5835
wertheim@goodmanweissmiller.com
smith@goodmanweissmiller.com
pinney@goodmanweissmiller.com

**Attorneys for Defendants**

AS TO OBJECTIONS:

_(signature)_

KIMBERLY Y. SMITH

12

## CERTIFICATE OF SERVICE

A copy of *Defendants' Responses to Plaintiff's First Set of Interrogatories* was sent by overnight mail, postage prepaid, this 6th day of January, 2003, to:

> Robert A. McMahon, Esq.
> EBERLY MCMAHON HOCHSCHEID LLC
> 3700 Eastern Avenue
> Cincinnati, OH 45226
> **Counsel for Plaintiff Hughette Crumpler**
>
> Michael A. Manzler, Esq.
> Deborah DeLong, Esq.
> DINSMORE & SHOHL LLP
> 1900 Chemed Center
> 255 East Fifth Street
> Cincinnati, OH 45202
> **Counsel for Third-Party Defendant John W. Paxton, Sr.**

_____
KIMBERLY Y. SMITH