UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HUGHETTE CRUMPLER, | : | Case No. C-1-02-131 |
| | : | |
| Plaintiff, | : | (Judge Susan J. Dlott) |
| | : | |
| v. | : | |
| | : | |
| TELXON CORPORATION et al., | : | |
| | : | |
| Defendants/Third-Party Plaintiffs, | : | **REPLY MEMORANDUM IN SUPPORT** |
| | : | **OF PLAINTIFF HUGHETTE** |
| v. | : | **CRUMPLER'S AND THIRD-PARTY** |
| | : | **DEFENDANT JOHN W. PAXTON, SR.'S** |
| JOHN W. PAXTON, SR., | : | **JOINT MOTION TO STRIKE CERTAIN** |
| | : | **AFFIDAVITS AND EXHIBITS** |
| Third-Party Defendant. | : | **SUBMITTED BY DEFENDANTS** |
| | : | |

**I.     INTRODUCTION**

Defendants/Third-Party Plaintiffs Telxon and Symbol violated a number of clear evidentiary rules by filing twelve affidavits, and unproduced exhibits thereto, that are replete with hearsay and conjecture, lack foundation, and otherwise fly in the face of unambiguous corporate documents properly in the record.  Federal Rule of Civil Procedure 56 and binding Sixth Circuit precedent establish without question that the non-moving party cannot defeat a dispositive motion with inadmissible evidence.  Accordingly, the Court should strike all such inadmissible evidence pursuant to Fed.R.Civ.P. 56(e), award Crumpler and Paxton their costs and fees under Rule 56(g), and grant their respective summary judgment motions.[1]

---

[1] Considering that Telxon and Symbol were granted the extraordinary right to file a 50-page brief in opposition to Crumpler's and Paxton's Motions for Summary Judgment, Telxon and Symbol have had more than adequate opportunity to address the legal issues raised therein.  But that has not stopped them from continuing to brief those motions in violation of the Court's briefing schedule.  *See* Memo. in Op. to Joint Motion to Strike Certain Summary Judgment Affidavits (Doc. 62, pp. 4-6, 18-19) and Reply of Defendants in Support of their Motion to Strike (Doc. 63, pp. 1-3).  These briefs are transparent attempts by Telxon and Symbol to file surreplies without the Court's authorization, because the issue of Paxton's authority has nothing to do with a motion to strike.  Rather than burdening the Court with any further response to these two unauthorized surreplies, however, Crumpler and Paxton

II. **ARGUMENT**

 A. **The Norton Rose Affidavit and Attached Exhibit Should Be Stricken.**

Telxon and Symbol do not have the luxury of choosing whether to comply with Sixth Circuit mandates and a federal statute. Telxon and Symbol had a choice: either they submitted sworn, notarized affidavits from their witnesses, or they had to comply with the requirements of 28 U.S.C. § 1746. Since the Rose affidavit is neither notarized nor dated, it must be stricken.

Telxon and Symbol miss the point entirely in claiming that the three Sixth Circuit cases Crumpler and Paxton cited do not "stand for the proposition that an undated declaration must be stricken." (Memo. in Op. at 1-2) No, the three cases stand for the proposition, as Crumpler and Paxton accurately stated, that to be admissible an affidavit must *either* be notarized or comply with the statute, 28 U.S.C. § 1746. According to the Sixth Circuit, since the declarations here were *not* notarized, they had to comply with the statute to be admissible. Since the statute specifically requires that affidavits be dated, and Rose's was not, it is self-evidently inadmissible. Little v. BP Exploration & Oil Co., 265 F.3d 357, 363 n. 3 (6th Cir. 2001) (affirming district court's disregard of letter submitted by plaintiff in opposition to summary judgment because letter was neither sworn nor dated as required by 28 U.S.C. § 1746).

Moreover, it was incumbent upon Telxon and Symbol to show that Rose's affidavit is based upon his personal knowledge. Statements such as "would have," "could have," and "should have" have no place in summary judgment affidavits filed in opposition to motions for summary judgment. Rose left Telxon's Board of Directors in August 1999. He cannot possibly offer personal knowledge of events that transpired over nine months later. Crumpler and Paxton

---

simply ask the Court to recognize that these repetitive arguments reflect nothing more than desperate and factually-unfounded attempts by Telxon and Symbol to create the illusion of genuine issues of fact where, on the true record evidence, as Crumpler and Paxton have demonstrated in their Motions for Summary Judgment and Reply Briefs, there are none.

do not take issue with Rose's prior service on behalf of Telxon. But that prior service did not provide Rose with *personal* knowledge of anything having to do with Crumpler and Telxon over nine months after his relationship with the corporation terminated.

Rose was not present, or even on the Board, when Telxon hired Crumpler. There is no evidence before the Court that Rose has *any* personal knowledge about Crumpler's position with Telxon; that he discussed her position and job duties with Paxton, Crumpler or anyone else; or even that he read another witness's deposition for information on these subjects. As such, Rose cannot possibly claim to have admissible personal knowledge that Crumpler's position "would have been" involved in the formulation of company policies when he had no association whatsoever with Telxon at the time and no foundation upon which to make such a claim.

Telxon and Symbol try to dance around this unavoidable conclusion by asserting Rose's alleged knowledge of Telxon's corporate structure and arguing that "corporate officers" are presumed to have knowledge of the acts of their corporation. (Memo. in Op. at 2-3) Aside from the fact that Rose was *not* a corporate officer, but rather an outside director, any such presumption would only apply to corporate acts occurring *while he was a director*. Rose has no personal knowledge of what Crumpler's position "would have" entailed or "would have" required, since her hiring occurred well after he was gone, when a new majority of directors comprised Telxon's Board (at least three of whom, Hone, Garwood, and Paxton, have disavowed any requirement of Board approval for employees who were not Executive Officers). Because Rose's foundationless and speculative conclusions plainly are not "rationally based on Rose's perception," Telxon's and Symbol's attempt to admit them under F.R.E. 701 fails.

Next, regardless of whether Rose was "in a position to have first-hand knowledge of communications made to Paxton," (Memo. in Op. at 3), that still would not change the fact that

3

his testimony is *hearsay* and lacks any foundation for its admissibility. Rose's affidavit purports to offer testimony about out of court comments allegedly made by other, unidentified individuals to Paxton as alleged "evidence" that Paxton was restricted in his authority to hire Crumpler. Testimony about what "the Board" allegedly "said" to Paxton (without any further evidence as to who said what, to whom, when, and why) would never be admissible at trial -- nor may such statements be admitted in opposition to a motion for summary judgment. All such statements are textbook examples of both hearsay and testimony lacking any foundational support.

Finally, Telxon and Symbol attempt to avoid the real issue in responding to Crumpler's and Paxton's arguments that Rose cannot contradict unambiguous corporate documents such as Telxon's written By-Laws. Telxon and Symbol seemingly suggest that notes from a meeting of a single *committee* of Telxon's Board of Directors -- a meeting which predated Paxton's association with the company, no less -- somehow altered the requirements of Telxon's official By-Laws. As set forth in detail in Paxton's Reply Brief in Support of Summary Judgment, there is no evidence before the Court that Telxon's By-Laws had been amended, formally or by consistent, long-standing and widely known "past practice," or that the Board of Directors had delegated (or even validly *could* have delegated) authority to a committee to override or modify the specific provisions of those By-Laws.[2] In short, Telxon's By-Laws speak for themselves. The court cannot consider testimony from Rose or any other witness about unidentified "policies and practices" that purport to contradict those By-Laws. All such testimony is inadmissible hearsay, and requires the exclusion of Rose's affidavit.

---

[2] Telxon and Symbol also shamelessly persist in offering arguments based on the false misrepresentation that Crumpler was, or "potentially" may have been, an "Executive Officer" of Telxon (Memo. in Op. at 4-6), despite previously **admitting** the obvious fact that she was *not* an Executive Officer! Because this issue already has been debunked thoroughly in the memoranda supporting Crumpler's and Paxton's Motions for Summary Judgment, they will not address it further other than to note that Telxon's and Symbol's habit of making statement after statement of "fact" without a shred of supporting record evidence does nothing to change the fact that Crumpler was not an Executive Officer whom the Board was required to approve.

4

### B.     The Raj Reddy Affidavit Should Be Stricken.

Contrary to Telxon's and Symbol's arguments (Memo. in Op. at 6), Crumpler and Paxton did not make "generalized allegations" regarding the inadmissibility of the Reddy affidavit. They specifically identified paragraphs 2-4, 11, 13-16, 18 and 19 as containing inadmissible evidence. In paragraphs 2 and 3, Reddy offers testimony regarding information allegedly set forth in corporate records not before the Court (unidentified and never-produced "proxy statements") and information allegedly "communicated to Telxon's various Chief Executive Officers and other senior management." Such testimony is patently inadmissible. The same is true of paragraph 11, where Reddy claims that "the Board communicated" certain information to Paxton. As noted above, neither Reddy nor Rose -- nor any other witness, for that matter -- can offer testimony about out-of-court communications allegedly made by unidentified individuals at unidentified points in time. Not only is all such testimony hearsay, but it also lacks any foundational support for its admissibility.

The majority of the remaining paragraphs, 13-15, 18, and 19, are inadmissible for the reasons discussed above relating to Rose's "policy and practice" statements: Reddy's vague references to alleged "policies and practices" lack foundation, do not even attempt to provide any specifics regarding the substantive provisions of such "policies" or how they were disseminated, communicated, or otherwise supposed to have been known (they certainly have no basis in actual record evidence), and impermissibly conflict with the written provisions of Telxon's By-Laws.

Also lacking foundation is Reddy's claim in paragraph 16 that Paxton was required to get the Board's approval for Crumpler's consulting agreement.[3] There is nothing in Reddy's

---

[3] One would think that Telxon and Symbol would have abandoned by now their ridiculous challenge to Crumpler's consulting agreements in light of Telxon Vice President of Human Resources Margaret Pais's unequivocal admission that Telxon properly hired Crumpler as an outside consultant and that she was entitled to all compensation paid to her pursuant to those agreements (which Pais herself was authorized to, and did, sign).

declaration to support that claim, other than vague references to "policies and practices." Telxon and Symbol claim that testimony about "policies and practices" is admissible under F.R.E. 406, but that rule allows testimony of practice only when offered "to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Here, Telxon and Symbol are not offering the alleged practice to prove that they acted in conformance therewith on a particular occasion -- indeed, they claim the opposite, that they did *not* so act with respect to Crumpler -- but instead to try to prove the alleged existence of a corporate requirement limiting Paxton's authority as CEO. The (alleged) fact that a committee of the Board had a "policy and practice" of doing something -- "reviewing and approving" certain agreements -- obviously does not mean, however, that there was a binding *requirement* of submitting such agreements to that committee. Reddy himself never even claims that it was. He simply offers his own unsupported conclusion. That conclusion is not admissible evidence.

Telxon's and Symbol's attempt to defend their failure to disclose and produce documents during discovery that they now seek to rely upon in opposition to Crumpler's and Paxton's Motions for Summary Judgment is even weaker (Memo. in Op. at 6-8). Crumpler may not have specifically identified "proxy statements" in her Requests for Production of Documents, but she did specifically request "all documents referring to or relating to your defense that Paxton was not authorized to enter into the following agreements with Crumpler on behalf of Telxon." (Doc. Req. No. 4, Ex. F to Defendants' Memo. in Op.) Telxon and Symbol obviously are trying to rely upon the proxy statements as purported evidence of restrictions imposed upon Paxton in hiring Crumpler. As such, those documents were responsive to Crumpler's Document Requests and should have been produced during discovery.

6

The undisclosed documents were likewise covered by Paxton's Requests for Production of Documents, specifically Document Request Nos. 5, 10, 23(b), 25(b), and/or 29.  (Ex. G to Defendants' Memo. in Op.)  Telxon and Symbol's word games notwithstanding, they obviously knew the documents were responsive and that they may rely upon them in defending Crumpler's claims and asserting counter-claims against Paxton.  Therefore, it was incumbent upon Telxon and Symbol to produce those documents in response to discovery requests tendered by both Paxton and Crumpler.  Their admitted failure to produce those documents during discovery warrants an order prohibiting them from relying upon those documents in opposition to Crumpler's and Paxton's Motions for Summary Judgment.  *See* Fed.R.Civ.P. 37(c)(1) ("**A party that** without substantial justification **fails to disclose information required** by Rule 26(a) or 26(e)(1) **or to amend a prior response to discovery** as required by Rule 26(e)(2) **is not**, unless such failure is harmless, **permitted to use as evidence** at a trial, at a hearing, or **on a motion any witness or information not so disclosed**.") (emphasis added).

Finally, it is specious for Telxon and Symbol to suggest that their abuse of the discovery process is somehow justified merely because the proxy statements are located on the SEC's website. (Memo. in Op. at 7)  None of the cited cases indicate that the discovery responses here were remotely adequate.  That might have been the case had Telxon and Symbol *specifically identified* the proxy statements as documents upon which they may rely in defending Crumpler's and Paxton's claims in this case, and then advised Crumpler and Paxton where such documents were located in the public domain.  But Telxon and Symbol never did that.  They withheld the documents from production, never specifically identified the proxy statements during the course of discovery, and simply answered generally that "some of this information is public record and more easily accessed at http://www.sec.gov/."  Apparently, Telxon and Symbol expected

7

Crumpler and Paxton to search through hundreds of thousands of documents on the SEC's website and somehow divine exactly to what Telxon and Symbol were referring in their vague discovery response. That is not the law. The Court should reject Telxon and Symbol's gamesmanship and strike the proxy statements from Reddy's declaration because Telxon and Symbol knowingly failed to disclose and produce those documents during discovery.

### C.    The Margaret Pais Declaration and Exhibits Should Be Stricken.

Telxon and Symbol can repeat their carefully selected snippets from Pais's deposition testimony all they want, but that does not alter the fact that Pais unequivocally admitted she had *no personal knowledge* of any facts that Paxton lacked the authority to hire Crumpler. (Pais Dep. at 63) Even when pressed to confirm what knowledge or information she had to suggest that it was required for Paxton to present Crumpler's employment package to Telxon's Compensation Committee, Pais candidly answered: "I don't have knowledge that it was required." Again, when asked during her deposition whether it was a requirement for Paxton to present Crumpler's employment package to that Committee, Pais answered, "I don't know. I don't know." (Id. at 62-63) Pais's complete lack of personal knowledge on this point could not be clearer.

Telxon and Symbol have no response to these admissions by their supposed star witness. How can Pais possibly come back, months after her deposition, and submit a declaration that attempts to explain away that admitted lack of knowledge? Her responses to those questions were unequivocal and completely eliminated Pais's ability to offer "evidence" limiting Paxton's authority to hire Crumpler. This is an elementary evidentiary principle that Telxon and Symbol cannot escape.

Yes, Crumpler and Paxton "again contend that [Pais] declaration exhibits were not produced in discovery" -- because that is the truth. Telxon and Symbol do not even attempt to

8

explain why they failed to produce Exhibits B and C to Pais's declaration. Those documents are responsive to the same Requests for Production of Documents by Crumpler and Paxton identified above, *e.g.*, the request in which Crumpler asked for documents that Telxon and Symbol intended to rely upon in contending that Paxton lacked authority to hire Crumpler. It is laughable for Telxon and Symbol to withhold Exhibits B and C from production yet now try to use those documents for the very purpose of contesting Paxton's authority to hire Crumpler.

The same is true of Exhibit F to Pais's declaration. Telxon's and Symbol's failure to produce that document is not justified simply because it is allegedly publicly available on the SEC's website. Again, did Telxon and Symbol expect Paxton and Crumpler to search that website for an *unidentified* document that Telxon and Symbol intended to rely upon in this case? That is not Crumpler and Paxton's duty under the rules of discovery. Instead, it was Telxon's and Symbol's responsibility to produce, or at a minimum identify, all responsive documents in discovery before trying to use those documents in opposition to dispositive motions.

Finally, Pais's handwritten notes (Exhibit E to her Declaration) are also inadmissible. Telxon and Symbol try to bypass the Federal Rules of Evidence by suggesting that Pais's handwritten notes constitute "business records" under Rule 803(1), (3) and/or (6). This is hardly the case. Neither Pais's declaration nor Telxon's and Symbol's brief supply factual support for the necessary elements of that claim, requirements such as proof that Pais's notes constituted her "present sense impression," a statement of her then existing state of mind, or a record of a regularly conducted activity outside the scope of the hearsay exclusion.[4] The Court therefore should not consider Pais's handwritten notes as evidence in this case.

---

[4] The fact that Pais wrote notes at some unknown time for some unknown reason on what otherwise may be an admissible business record does not make her handwritten notes themselves admissible.

9

**D.     The Gary Grand Affidavit Should Be Stricken.**

Telxon and Symbol barely respond to Crumpler and Paxton's Motion to Strike paragraph 2 from Grand's declaration because it recites inadmissible hearsay statements allegedly made by Pais to Grand. Contrary to Telxon's and Symbol's apparent belief, the Federal Rules of Evidence do not allow for the admission of hearsay simply because the hearsay allegedly corroborates other inadmissible evidence. The reference in Grand's declaration to a statement allegedly made to him by Pais is textbook hearsay that cannot be considered part of the record evidence on summary judgment.

Moreover, Telxon and Symbol flatly misstate the record when trying to convince the Court that Grand should be allowed to refer to documents which are not before the Court. How can Telxon and Symbol make this argument with a straight face? Telxon and Symbol have the audacity to refer to "accounting records" for 1998, 1999 and 2000 to question Paxton's authority, judgment and compliance with alleged corporate "policies and practices," but they have never produced those documents in discovery or made them a part of their record before this Court. Grand's reference to these non-existing documents also violates the "best evidence rule" and flies in the face of elementary principles governing the admissibility of non-hearsay that has a proper foundation.[5] The Federal Rules of Civil Procedure and the Federal Rules of Evidence mandate that the Court not consider Grand's declaration and attached exhibits in connection with Paxton's and Crumpler's Motions for Summary Judgment. *See* Fed.R.Civ.P. 37(c)(1).

---

[5]   Telxon and Symbol mislead the Court by claiming that "Telxon produced its accounting records for 1999 and 2000." Exhibit KK hardly constitutes Telxon's accounting records for 1999 and 2000. (If it did, that would certainly help explain the SEC's and other regulatory enforcement agencies' investigation of Telxon and Symbol and the forced resignations of Symbol's CEO, CFO and General Counsel.) Telxon and Symbol have *not* produced a single "accounting record" referenced in Grand's Declaration, yet nonetheless want the Court to take Grand's "best recollection" that the documents exist and that the documents reflect what he claims they reflect -- all without ever introducing the documents themselves as evidence. This outlandish suggestion should be firmly rejected.

10

### E.     The Edward Chung Affidavit and Exhibits Should Be Stricken.

Chung's unsworn and unnotarized declaration must be disregarded because it is not dated, in violation of the plain requirements of 28 U.S.C § 1746.  *See* Little v. BP Exploration, *supra*, 265 F.3d at 363 n. 3.  Telxon and Symbol respond brilliantly that "this argument holds no water" (Memo. in Op. at 13, n. 11), but have come forward with no authority whatsoever for the proposition that the declaration is admissible despite the fact that it admittedly does not comply with the governing statute.

Chung's Declaration and the exhibits thereto also must be stricken because Telxon and Symbol admit that Chung was not disclosed as a potential witness and that the attached documents were not produced in discovery.  Not only did Telxon and Symbol fail to disclose Chung as a person with knowledge, but they now want to use him as a witness even though they claim that Crumpler and Paxton would be precluded by attorney-client privilege from deposing him!  This makes no sense.  (To the contrary, if Telxon and Symbol were somehow permitted to utilize Chung as a witness regarding merger-related documents, then they clearly have waived any such privilege on such subjects.)

It also makes no sense for Telxon and Symbol to claim that, just because Paxton and Crumpler knew of Chung's law firm, they should have known that Telxon and Symbol may use Chung as a witness in this case.  (Memo in Op. at 12)  Crumpler and Paxton know of a lot of people who worked at Telxon, Symbol, or with their outside attorneys and consultants.  That knowledge hardly leads to the conclusion that Crumpler and Paxton were required to read a crystal ball to ascertain the identity of Telxon's and Symbol's potential witnesses in this case.[6]

---

[6] Interestingly, Telxon and Symbol assert that "Paxton and Crumpler both worked with Simpson Thatcher & Bartlett LLP during the merger." That is quite an admission considering that Telxon and Symbol have tried repeatedly to dispute that Crumpler was ever employed with Telxon and the services she rendered during the course of her employment.  Apparently that issue is now off the table.

11

Moreover, it is not within the purview of Telxon and Symbol to decide whom Crumpler and Paxton may depose. Parties are required to identify individuals with knowledge in their initial disclosures and also to respond fully (and promptly supplement such responses) to Interrogatories on the same subject matter. Telxon and Symbol did neither with respect to Chung. As such, they cannot now use his testimony for any purpose, regardless of speculation as to whether Crumpler or Paxton would have deposed him, had they been given the chance, and regardless of whether the testimony is offered for substantive or non-substantive reasons.[7]

Telxon and Symbol's misrepresentations continue with respect to the documents attached to Chung's Declaration that they failed to produce during discovery. While *portions* of the Merger Agreement were attached to pleadings filed in this case, the documents attached to Chung's Declaration were never produced during discovery. It is simply false for Telxon and Symbol to claim they produced a copy of the Merger Agreement in discovery. Telxon and Symbol do not even try to claim they produced the other documents attached to Chung's Declaration. Instead, Telxon and Symbol again claim that, because those and a multitude of other documents were available on the SEC's website, Crumpler and Paxton should have obtained access to these unidentified documents through means other than Telxon and Symbol. As previously noted, it is a violation of the discovery rules for Telxon and Symbol to knowingly withhold documents from production in discovery and yet turn around and try to use them in an effort to concoct "issues of fact" in opposition to summary judgment. The Chung declaration and exhibits therefore should be stricken.

---

[7] Crumpler and Paxton certainly are not aware of any exception to the Federal Rules of Civil Procedure that allow a party to knowingly fail to disclose a potential witness' identity and then use that person later to authenticate records.

### F. The Cecile Hickman Affidavit Should Be Stricken.

Contrary to Telxon and Symbol's apparent misunderstanding, Hickman's declaration is not admissible simply because she asserts a conclusion that it is based on alleged, undisclosed "personal knowledge." Telxon and Symbol are required to lay a foundation for Hickman's testimony to be admissible, just as they would have to do if Hickman took the stand at trial. Her conclusory assertion does not come close to satisfying the requirements for the admissibility of evidence. The declaration of Hickman -- who worked in Texas -- is devoid of any factual evidence that she had personal knowledge as to when any of Crumpler's employment agreements were signed or not signed (in Illinois and/or Ohio). Hickman has the right to believe anything she wants outside of court, of course, but that does not render her unsupported conclusions admissible in opposition to Crumpler's and Paxton's factually and legally grounded Motions for Summary Judgment.

### G. The Glen Hansen Affidavit Should Be Stricken.

Like Rose, Reddy, and other Telxon and Symbol witnesses, Hansen purports to offer vague testimony about unidentified corporate "policies and practices" that are found nowhere in Telxon's corporate documents and unheard of even by other Telxon Board members. All of that testimony is conclusory and inadmissible hearsay. For that reason, in addition to the fact that Hansen references a document Telxon and Symbol failed to produce in discovery, his declaration should be stricken.

### H. The Walter Siegel Affidavit and Attached Exhibit Should Be Stricken.

Telxon and Symbol offer no explanation for their attempt to skirt the discovery rules by using Siegel as a witness after failing to disclose him, and then having Siegel testify about a document that Telxon and Symbol withheld from production during discovery. Telxon's and

13

Symbol's attempted justifications are meritless. If Siegel offers nothing of any substantive nature, then Telxon and Symbol should withdraw his declaration. Obviously, that is not their intention. They are trying to use Siegel to introduce as evidence a document that they never produced and which apparently cannot be authenticated by any witness who was properly and timely disclosed during discovery. The discovery rules exist for legitimate reasons; Telxon and Symbol are not permitted to choose if, when, and to what extent they comply with them.

### I. The Ketki Patel Affidavit Should Be Stricken.

As with Siegel and other witnesses previously discussed, Telxon and Symbol cannot use Patel or any other witness who was not disclosed in discovery. Fed. R.Civ.P. 37(c)(1). Regardless of their reasons for offering her as a witness, Telxon and Symbol were required to identify anyone with knowledge so that Crumpler and Paxton could determine whom to depose. Telxon and Symbol obviously desire to use the Holiday Inn Express records as alleged evidence of days that Crumpler stayed in the Cincinnati area to contest Crumpler's rights under her employment-related agreements. That is an improper use of a non-disclosed witness to offer and use information for a substantive (though ultimately immaterial) purpose.

Not only was Patel not disclosed as a witness, moreover, but Telxon and Symbol have offered no evidence that the records attached to Patel's Declaration are authentic or otherwise constitute an exception to the hearsay rule under F.R.E. 803(6). Because Patel's declaration contains nothing more than inadmissible hearsay from a witness whom Telxon and Symbol never previously disclosed, the Court should strike the declaration in its entirety.

### J. The Bridgett Huerkamp Affidavit Should Be Stricken.

At no point in time did Telxon and Symbol ever identify Huerkamp as a person with knowledge or a person that they even possibly might use as a witness in this case. That fact is

uncontested, and requires that Huerkamp's statements be disregarded. Yes, Crumpler and Paxton "knew of" Huerkamp, but, with all due respect, so what? They knew of a lot of people who worked at Telxon and/or Symbol. Their familiarity with Huerkamp does not impose an obligation to conclude that Telxon and Symbol would try to misrepresent her as someone with information relevant to and admissible in this case. Crumpler and Paxton still do not believe that she has any relevant information.

Telxon and Symbol, on the other hand, obviously felt that Huerkamp had relevant information because they now attempt to use her as a witness (to speculate, without any actual personal knowledge, as to whether Paxton signed certain documents). Telxon and Symbol try to justify their failure to identify Huerkamp on their initial disclosures, but they decided to use her as a witness at some point during the course of discovery. As of that point, Telxon and Symbol had an obligation to supplement their discovery responses to identify Huerkamp as a person with knowledge and a potential witness. Only then would Crumpler and Paxton have had the opportunity to decide whether to depose Huerkamp to question her alleged knowledge about Paxton's signature on documents and some unidentified person's hypothetical use of Paxton's signature stamp. For this reason alone, as well as the others set forth in Crumpler's and Paxton's joint motion, the Court should strike Huerkamp's declaration.[8]

### K.  The Daryl Kochy Affidavit Should Be Stricken.

Kochy is yet another witness that Telxon and Symbol knowingly failed to disclose during discovery. Not only did they fail to list him on their initial disclosures to Crumpler and Paxton, but they never supplemented any of their answers to Interrogatories to suggest that Kochy had relevant knowledge and information, or that they intended to use him as a witness. Telxon's and

---

[8] Telxon and Symbol neither challenged nor addressed the rest of the Crumpler's and Paxton's articulated bases for striking Huerkamp's declaration. Telxon and Symbol's bald assertion that Huerkamp's "testimony is based on personal knowledge and entirely proper" is hardly a compelling rebuttal of the patent inadequacies of her affidavit.

Symbol's only response is that Crumpler and Paxton knew of Kochy and, therefore, Telxon and Symbol may use him as a witness. (Memo in Op. at 16)  The discovery rules were designed to avoid exactly the type of games that Telxon and Symbol have played in this case.  Their conduct should be sanctioned, and the Kochy declaration stricken from the record, for this reason as well as because the document regarding which Kochy (erroneously) opines, Telxon's Relocation Policy, is already in the record and speaks for itself.

### L.     The Robert Goodman Affidavit and Exhibits Should Be Stricken.

Telxon and Symbol should not be permitted to decide selectively to which commitments they will adhere and which they will disregard when they become inconvenient.  Not only did Telxon and Symbol previously represent to the Court, in order to avoid disqualification of the law firm of which Goodman is a member, that Goodman would *not* be used as a witness, but they now try to use Goodman to introduce documents that they withheld from production during discovery.  The Court should not permit such games of hide and seek.

Telxon and Symbol offer no explanation why Exhibit B to Goodman's Declaration was not produced.  They simply claim it was never requested.  That is not true.  Since Telxon and Symbol obviously cite Exhibit B to Goodman's declaration as supposed "evidence" of the alleged restrictions on Paxton's authority, there is no question that they should have produced the document to Crumpler and Paxton pursuant to the document requests specifically identified above (Crumpler Doc. Req. No 4; Paxton Doc. Req. Nos. 5, 10, 23(b), 25(b), and/or 29)  Having failed to produce the documents during discovery, Telxon and Symbol cannot ambush Crumpler and Paxton with them now.  The Court should strike and disregard Goodman's declaration and Exhibit B thereto.

### III.   CONCLUSION

For these and all the reasons more fully set forth in the underlying Joint Motion to Strike and Memorandum in Support thereof, Plaintiff Hughette Crumpler and Third-Party Defendant John W. Paxton, Sr. respectfully move the Court to strike the specified affidavits and exhibits as improper and inadmissible and, pursuant to Fed.R.Civ.P. 56(g), award Crumpler and Paxton their reasonable expenses incurred in having to prepare and file this Motion and Reply Memorandum.

Respectfully submitted,

s/ Robert A. McMahon
Robert A. McMahon (0064319)
Eberly McMahon Hochscheid LLC
3700 Eastern Avenue
Cincinnati, OH  45226
(513) 533-3441
(513) 533-3554 (fax)
E-mail:  bmcmahon@emh-law.com

Trial Attorney for Plaintiff Hughette Crumpler


s/ Michael A. Manzler
Michael A. Manzler (0059968)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 977-8693
(513) 977-8141 (fax)
E-mail:  michael.manzler@dinslaw.com

Trial Attorney for Third-Party Defendant
     John W. Paxton, Sr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Steven J. Miller, James A. Wertheim, Jon J. Pinney and Kimberly Y. Smith of Goodman Weiss Miller LLP, 100 Erieview Plaza, 27th Floor, Cleveland, Ohio 44114-188; and Robert A. McMahon of Eberly McMahon Hochscheid LLC, 3700 Eastern Avenue, Cincinnati, Ohio 45226.

                    **s/ Michael A. Manzler**
                    Michael A. Manzler

#962752